A95A2311. PRATER v. THE STATE.
(469 SE2d 780)

POPE, Presiding Judge.

Lionel Prater was tried by a jury and convicted of three counts of burglary and one count of attempted burglary, and appeals. In his sole enumeration of error, Prater contends that the trial court erred in failing to properly investigate and determine whether he knowingly

and intelligently waived his right to counsel.

Prater was charged with the crimes on March 12, 1994. On November 14, 1994, the case came on for trial in the superior court. Prater informed the court that attorney Colin McDonald had been appointed to represent him on April 11, 1994. Prater stated that McDonald subsequently withdrew from the case, claiming that Prater would not cooperate with him. Prater informed the court that a second attorney, James Bradley, was appointed to represent him on October 21, 1994. Prater told the court that Bradley did not take any steps to represent him before asking to be removed from the case. The record contains Bradley's request to withdraw as Prater's attorney, dated November 11, 1994. The court granted this request and entered an order removing Bradley as Prater's attorney of record on November 14, 1994. In its order doing so, the court stated that it had held a hearing on the matter at which the defendant was present. There is no transcript of that hearing.

After explaining Bradley's involvement in the case, Prater stated: "[F]or the record as stated at no time have I waived any present or future rights nor have I authorized anyone to do so. I, Lionel Prater, 107284, have [sat] here seven months, four days and want to be tried. I want to deal with this case now. Not one more month do I want to sit here at the jail without being tried."

The court then recapped the history of Prater's prior two attorneys and informed Prater that he still had the right to have an attorney appointed. Prater stated: "I think over the seven months I pretty much prepared myself for what is to come and I'm willing to deal with my case today." Prater told the judge that he had been denied his request to go to the law library. Prater then stated that he wanted to file a "motion to dismiss the pawn slip," arguing that a document which the State intended to submit in its case against him was fraudulent. After hearing Prater's argument, the court denied the motion.

The court again reiterated Prater's history with court-appointed attorneys. The court stated that the first attorney, McDonald, had filed a demurrer to the previous indictment, which had been granted. The court then recited that Prater's second attorney had withdrawn from the case the previous week. The court again informed Prater of his right to an appointed attorney and asked whether Prater wanted the court to appoint another attorney.

This exchange ensued: "PRATER: Your Honor, I prefer to get this case over with today, sir. THE COURT: Does that mean you want to represent yourself at trial? PRATER: Yes, I do, sir. Yes, I do. THE COURT: And you're waiving your right to an attorney? PRATER: Yes, I am."

The court then recited that Prater was pleading not guilty, and the court stated the charges against him. This exchange followed:

"THE COURT: Do you understand those charges? PRATER: Yes, sir. THE COURT: And you wish to plead not guilty? PRATER: Yes, sir. THE COURT: You wish to waive your right to an attorney? PRATER: Yes sir." THE COURT: And go to trial? PRATER: Yes, sir."

Prater then entered his not guilty plea. The court then concluded that Prater was capable of representing himself and that he knowingly had waived his right to an attorney.

The case then proceeded to trial with Prater representing himself. The record reflects that during trial Prater examined and called witnesses and introduced documents. Prater then took the stand and presented his own version of the events. He denied involvement in the crimes and argued, in essence, that he had been framed.

The jury found Prater guilty of the charges. After judgment, another attorney was appointed to represent Prater; he filed a motion for new trial, amended motion for new trial and notice of appeal.

In his sole enumeration of error, Prater argues that the trial court failed to determine on the record that Prater knew the nature of the charges against him, the statutory offenses included within them, the range of potential punishments, the possible defenses to the charges and mitigation thereof, and all other facts essential to a broad understanding of the matter. We agree and reverse.

"A person charged with a felony in a state court has an unconditional and absolute constitutional right to a lawyer. This right attaches at the pleading stage of the criminal process, and may be waived only by voluntary and knowing action. Waiver will not be lightly presumed, and a trial judge must indulge every reasonable presumption against waiver. It is clear, however, that should a defendant choose to represent himself, he must have an opportunity to voluntarily, knowingly, and intelligently waive his right to counsel. The standard for waiver requires an intentional relinquishment or abandonment of a known right or privilege, and the constitutional right of the accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear on the record." (Citations and punctuation omitted.) *Hasty v. State*, 215 Ga. App. 155, 158 (2) (450 SE2d 278) (1994). See generally *Keith v. State*, 218 Ga. App. 729 (1) (463 SE2d 51) (1995).

"Waiver of counsel requires more than a showing of a knowledge of right to counsel; there must also be evidence of relinquish-

ment. . . . In order to establish a valid waiver, a trial judge must investigate as long and as thoroughly as the circumstances of the case before him demand. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter." (Punctuation omitted.) *Kirkland v. State*, 202 Ga. App. 356, 357-358 (1) (414 SE2d 502) (1991).

The requirements essential to a voluntary, knowing, and intelligent waiver of counsel are absent here. The record was bereft of any evidence that Prater understood the consequences, dangers or permanency of waiving this right. The transcript shows only that Prater wanted to expedite the trial process. There is no indication that Prater understood the nature of the charges; the statutory offenses included within them; the range of allowable punishments thereunder (especially in light of the State's intent to introduce five prior similar crimes under the recidivist provisions of OCGA § 17-10-7); possible defenses to the charges and circumstances in mitigation thereof; or other facts essential to establishing a knowing waiver. See *Clarke v. Zant*, 247 Ga. 194 (275 SE2d 49) (1981).

Moreover, we cannot conclude that the error was harmless. Compare *McCook v. State*, 178 Ga. App. 276 (342 SE2d 757) (1986). Although the evidence against Prater was ample, we cannot discount the difficulties he encountered, because of his inexperience in legal matters, in defending himself. For instance, in cross-examining a witness for the State who testified that she had seen a red Ford Tempo at the scene of one of the burglaries, Prater asked twice: "Do I look like a red Ford Tempo?" The record shows that Prater was confused, disorganized, and ill-equipped for handling the case, and that he was inadequately warned beforehand of these dangers. Compare *May v. State*, 217 Ga. App. 427 (457 SE2d 694) (1995). Because we cannot conclude that Prater's conviction was independent of his decision to represent himself, we conclude that the judgment below must be reversed and the case remanded for further proceedings consistent with this opinion.

*Judgment reversed. Beasley, C. J., and Ruffin, J., concur.*

DECIDED MARCH 7, 1996.

*Richard D. Hobbs*, for appellant.
*Robert E. Keller, District Attorney, M. Tom Woodward, Assistant District Attorney*, for appellee.