## S97A2012. WAYNE v. THE STATE.
### (495 SE2d 34)

THOMPSON, Justice.

Following a jury trial in which Willie Mays Wayne represented himself, he was convicted of malice murder, felony murder (predicated on the underlying felonies of possession of a firearm by a convicted felon, possession of a firearm during the commission of a felony, aggravated assault, and theft by taking), armed robbery, kidnapping, possession of a firearm by a convicted felon, possession of a firearm during the commission of a felony, aggravated assault, and theft by taking.[1] On appeal, Wayne primarily asserts that the trial court erred in determining that he knowingly and intelligently waived his right to counsel.

Viewing the evidence in a light favorable to the verdict, we find the following: Wayne knew the victim, Lovell Matthews, and asked him for a ride. Matthews obliged. Later that day, Matthews' girl friend paged Matthews several times. Each time she did, Wayne answered the page.

The next day, Wayne was seen with Matthews' car, a 1977 Buick. The back seat was bloodied and so was Wayne's shirt. Wayne cleaned the blood from Matthews' car, explaining to a friend that he had been in a fight with the person who owned, and loaned him, the car. Wayne added that he took the owner of the car to the hospital.

Over the course of the next several days, Wayne pawned a gun which belonged to Matthews. He also pawned a gun which, according to a ballistics expert, was probably used to kill Matthews. Then, Wayne left Georgia.

When the police found Matthews' decomposed body, they issued an alert for his car. One month later, the car was located in Michigan. It was being driven by an individual who said he was Wayne's roommate. Wayne was arrested in short order. At that time, he possessed Matthews' birth certificate and social security card, and identified himself as Lovell Matthews.

1. The evidence is sufficient to enable any rational trier of fact to find Wayne guilty beyond a reasonable doubt of the crimes for which

---

[1] The crimes were committed in Fulton County on August 1, 1992, and Wayne was indicted on December 10, 1993. The trial commenced on April 4, 1994, and the jury returned its verdict on April 8, 1994. The trial court vacated the felony murder conviction and sentenced Wayne to life for malice murder, five years (consecutive) for violating OCGA § 16-11-131, five years (consecutive) for possession of a firearm during the commission of a felony, consecutive life sentences for armed robbery and kidnapping, twenty years (consecutive) for aggravated assault, and twenty years (consecutive) for theft by taking. Wayne's timely filed motion for a new trial, as amended, was denied on May 16, 1997. Wayne filed a notice of appeal on May 22, 1997, and the case was docketed in this Court on August 27, 1997. Oral argument was heard on November 17, 1997.

he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Wayne was represented initially by a public defender. Because Wayne made numerous complaints about that attorney and repeatedly asked to represent himself, the trial court permitted the public defender to withdraw and appointed another attorney, Robert F. Coheleach, to represent Wayne. Soon, Wayne complained about Coheleach, too. When Wayne asked to be allowed to proceed pro se, the trial court initially denied his request and advised him to cooperate with Coheleach. When Wayne persisted, the trial court permitted him to proceed pro se, with Coheleach standing by to assist him. Shortly thereafter the trial court reversed itself, ruling that Wayne would not be allowed to represent himself, and that Coheleach would be his attorney. Soon, Wayne again expressed dissatisfaction with Coheleach and asked for permission to represent himself. The trial court acceded to Wayne's request and he proceeded to trial without the benefit of counsel.

Wayne asserts the trial court failed to make an appropriate inquiry as to whether he knowingly and intelligently waived his right to counsel. We disagree. The trial court ascertained that Wayne completed the ninth grade, obtained his GED, and attended business school at a university for eighteen months. It also ascertained that Wayne was aware that various motions would be addressed before trial and that he understood what would take place during the course of a trial.[2] Asked if he appreciated the "substantial number of pitfalls involved in self-representation," Wayne responded that he did, adding, "It is very frightening and for the record, it is a very frightening thing and I take it very seriously." The trial court informed Wayne repeatedly that self-representation was dangerous; that self-representation would be hurtful; and that the only question would be how much he would hurt himself. The trial court asked Wayne directly if his decision to proceed pro se was made intelligently, freely and voluntarily, and Wayne responded in the affirmative. Accordingly, the trial court found that Wayne knowingly, intelligently and voluntarily waived his right to counsel.

In *Clarke v. Zant*, 247 Ga. 194 (275 SE2d 49) (1981), we discussed the dilemma faced by a trial judge when a criminal defendant refuses representation by appointed counsel and announces his desire to represent himself. In doing so, we recognized the right of self representation as pronounced in Faretta v. California, [422 U. S. 806 (95 SC 2525, 45 LE2d

---

[2] When the trial court enumerated various pending matters that would need to be addressed, Wayne reminded the court that a motion to suppress was pending, too.

562) (1975)]. We also found that a defendant cannot exercise this right unless it is shown that he has adequately waived his right to counsel. *Taylor v. Ricketts*, 239 Ga. 501 (238 SE2d 52) (1977). . . . This led us to the holding that in future cases the record should reflect a finding of the trial court that the defendant has validly chosen to proceed pro se and that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel.

*Cochran v. State*, 253 Ga. 10, 11 (315 SE2d 653) (1984).

The record in this case reflects that Wayne made an informed and voluntary choice to relinquish his right to counsel and represent himself and that the trial court so found. The mere fact that, in the opinion of a court appointed psychiatrist, Wayne lacked the ability to represent himself well is of no consequence. The test is not whether the accused is capable of good lawyering — but whether he knowingly and intelligently waives his right to counsel. (We note, parenthetically, that the psychiatrist opined that Wayne was competent to waive that right knowingly and intelligently.)

Relying upon *Prater v. State*, 220 Ga. App. 506 (469 SE2d 780) (1996), Wayne asserts the record does not demonstrate a valid waiver of the right to counsel because the trial court did not establish that the waiver was " 'made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter.' " Id. at 509. See also *Campbell v. State*, 128 Ga. App. 74, 76-77 (195 SE2d 664) (1973), quoting *Von Moltke v. Gillies*, 332 U. S. 708, 723 (68 SC 316, 92 LE 309) (1948). In this regard, Wayne maintains that a waiver of counsel cannot be said to be knowing and intelligent unless the trial court makes each and every one of the inquiries outlined in *Prater*. We disagree. Although it would be helpful, it is not incumbent upon a trial court to ask each of the questions set forth in *Prater*. The record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver. See *United States v. Fant*, 890 F2d 408 (11th Cir. 1989); *Kirkland v. State*, 202 Ga. App. 356, 358 (414 SE2d 502) (1991). Compare *Hasty v. State*, 215 Ga. App. 155, 159 (450 SE2d 278) (1994) with *Singleton v. State*, 176 Ga. App. 733 (337 SE2d 350) (1985).

3. Three separate crimes were introduced into evidence to show Wayne's modus operandi and identity. In each of the separate crimes, Wayne plead guilty to theft by receiving a stolen automobile. Wayne asserts that the separate crimes do not have a sufficient connection

or similarity to the crimes for which he was tried and that, therefore, they were inadmissible.

The first crime occurred in 1981 when Wayne stole a Mercury Cougar. Placed under arrest and advised of his rights, Wayne stated that he had purchased the car for $900. Subsequently, Wayne was found to be in possession of a driver's license and other items belonging to the owner of the car.

In 1987, Wayne was seen driving a stolen Buick Somerset with an Ohio tag. Approached by police officers, Wayne claimed that the car belonged to his sister. A fracas ensued and Wayne fired shots at the officers. Approximately one week later, Wayne was arrested and items belonging to the car's owner were found on his person.

Finally, in 1992, police officers stopped Wayne's girl friend in a stolen Toyota Corolla. She informed the police that the car belonged to Wayne and that he let her use the car. When the police questioned Wayne, he identified himself as Willie Mays and insisted that the car rightfully belonged to him.

The proper focus is on the similarity, not the differences, between the separate crimes and the crime in question. *Farley v. State*, 265 Ga. 622, 624 (458 SE2d 643) (1995). We find that these separate crimes were sufficiently similar to one of the crimes for which Wayne was being tried — theft by taking an automobile. *Preston v. State*, 257 Ga. 42, 45 (5) (354 SE2d 135) (1987); *Preston v. State*, 183 Ga. App. 20, 21 (2) (357 SE2d 825) (1987). They all involve stolen automobiles and, in each instance, Wayne claimed that he was in lawful possession of them. Moreover, in two of the separate crimes, and the crime in question, Wayne was in possession of personal items belonging to the owner of the vehicles. And, in one of the separate crimes, and the crime in question, Wayne gave a false name upon arrest.

4. In addition to the similar transactions, the trial court permitted the State to introduce Wayne's other prior felony convictions. Inasmuch as the felony murder charge was predicated, in part, upon the underlying felony of possession of a firearm by a convicted felon, Wayne's other prior felony convictions were properly admitted to prove that Wayne was a convicted felon. *Roberts v. State*, 255 Ga. 170 (336 SE2d 246) (1985); *Head v. State*, 253 Ga. 429, 432 (d) (322 SE2d 228) (1984).

5. Defendant asserts the trial court erred in refusing to permit him to show that the victim had been convicted of a drug offense. In that regard, defendant argues that evidence of the victim's drug activities rendered it likely that he had been killed in connection with those activities. This assertion is without merit. Defendant failed to show any nexus whatsoever between the victim's alleged criminal activities and his murder. He merely speculates that some

unknown person may have killed the victim because he was involved with drugs. It cannot be said, therefore, that the trial court erred in prohibiting defendant from introducing the evidence in question. Compare *Henderson v. State*, 255 Ga. 687, 689 (1) (341 SE2d 439) (1986) with *Neal v. State*, 210 Ga. App. 522, 523 (2) (436 SE2d 574) (1993).

6. The trial court did not err in admitting photographs of the victim's decomposed body. *Drane v. State*, 265 Ga. 255, 260 (10) (455 SE2d 27) (1995). "Photographs relevant to the location of the body and the nature and location of wounds are admissible where alterations to the body are due to the combined forces of the murderer and the elements." Id.

7. The use of the phrase "moral and reasonable certainty" in a charge which, on the whole, repeatedly and accurately conveys the concept of reasonable doubt does not constitute reversible error. *Baldwin v. State*, 264 Ga. 664 (1) (449 SE2d 853) (1994). Although the phrase did not constitute reversible error in this case, we take this opportunity to discourage its use in future cases. See also *Armstrong v. State*, 265 Ga. 18, 19 (3) (453 SE2d 442) (1995) (better practice is to omit any reference to a "moral and reasonable certainty").

8. Inasmuch as there was no evidence of an independent aggravated assault, the aggravated assault conviction merged with the malice murder conviction as a matter of fact. *Jordan v. State*, 267 Ga. 442, 447 (5) (480 SE2d 18) (1997). It follows that the conviction and sentence for the aggravated assault of Lovell Matthews must be set aside. Id.

9. The remaining enumerations of error are either not preserved by timely objection or without merit.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Fletcher, P. J., who concurs specially as to Division 3.*

FLETCHER, Presiding Justice, concurring specially to Division 3.

I agree that the evidence of Wayne's prior car thefts was properly admitted, but not simply because of similarity. Rather, the evidence is admissible because the unusual circumstances of the prior car thefts, and Wayne's subsequent guilty pleas, are relevant to disprove Wayne's explanation that he had been loaned the car.

DECIDED FEBRUARY 2, 1998.

*Megan C. DeVorsey,* for appellant.

*Paul L. Howard, District Attorney, Gina C. Marshall, Cari K. Johanson, Assistant District Attorneys, Thurbert E. Baker, Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.