A98A2180. WOODS v. THE STATE.
(510 SE2d 848)

Judge Harold R. Banke.

Barron Woods was convicted of two counts of simple battery and received two consecutive twelve-month sentences. On appeal, he enumerates nine errors.

This case arose after Woods accused his fiancee of infidelity, choked her, and bit into her neck. The victim waited several days before calling the county's victim witness assistance program director, who had helped her with a previous complaint against Woods. The victim then swore out an arrest warrant and obtained a temporary restraining order against Woods based on this incident and two

other alleged batteries pending against Woods.

After his arrest some days later, Woods received appointed counsel. At Woods' request, his counsel withdrew days before trial, after informing Woods that if he failed to obtain private counsel by his trial date, he could be required to proceed without counsel.

Notwithstanding that advice, Woods appeared in court without counsel, seeking a continuance in order to obtain counsel. The trial court refused to grant a continuance, finding he had waived his right to counsel by appearing without a lawyer and declining the public defender's services.

The court then ordered recordation of the proceedings and outlined the elements of a trial to Woods, starting with voir dire. After reading the charges, the court assured that the State had satisfied its discovery obligations and informed Woods of the range of allowable punishments he faced if he pleaded guilty or proceeded to trial. Preliminary instructions to the jury commenced at 2:10, the jury retired at 4:50 and rendered a guilty verdict at 5:32. *Held*:

Woods argues that the trial court erred in finding that he knowingly, intelligently, and voluntarily waived his right to counsel. We agree.

The right to counsel attaches when an accused is placed on trial for any offense, felony or misdemeanor, for which he faces imprisonment. *Rutledge v. State*, 224 Ga. App. 666, 669 (3) (482 SE2d 403) (1997). While the right to counsel, like all constitutional rights, may be knowingly and intelligently waived, the trial court bears "the serious and weighty responsibility" of conducting an investigation to assure that the waiver is intelligent and competent. *Hamilton v. State*, 233 Ga. App. 463, 466 (1) (b) (504 SE2d 525) (1998). To be valid, such a waiver "must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and *all other facts essential to a broad understanding of the matter.*" (Punctuation omitted.) Id. When a defendant challenges the validity of a waiver on appeal, the State bears the burden of proving that the trial court provided him with sufficient information and guidance upon which to knowingly and intelligently relinquish this right. Id.

Here, the record shows that the trial court only informed Woods of the statutory offenses and the range of allowable punishments. It does not indicate why Woods discharged his appointed attorney. Compare *Flantroy v. State*, 231 Ga. App. 744, 745 (2) (501 SE2d 10) (1998). Nor does it show that he was warned of the dangers of self-representation. *McCall v. State*, 232 Ga. App. 684, 685 (1) (503 SE2d 578) (1998). Woods' possible defenses and any circumstances in mitigation were not addressed. *Hamilton*, 233 Ga. App. at 466 (1).

Although he signed a waiver, the adequacy of the form used was questioned in *Hamilton,* 233 Ga. App. at 464, n. 1. Woods never affirmatively stated that he wished to proceed without counsel and represent himself.[1] Compare *Prater v. State,* 220 Ga. App. 506, 508 (469 SE2d 780) (1996). On the contrary, throughout the trial Woods continued to express his desire for representation.

Woods' confusion about the nature of the charges was evident throughout the trial, particularly during his direct testimony. He faced other battery charges involving the same victim and apparently was confused about which charges were at issue here, believing they arose simply because he returned to the victim's home.

Woods also failed to apprehend the dangers of self-representation. Woods was the only defense witness. During his cross-examination, the State inquired, without objection, court intervention, or a USCR 31.3 hearing, about his prior convictions (going back eleven years) and the pending charge. All but one of the nine convictions appear to be misdemeanors, but because the State provided no written record of the convictions, it is impossible to tell.

The State's justification for this tactic, that Woods opened the door for this line of questioning or was subject to impeachment based upon his admission on direct that he had "bad faults," had done "some wrong things," and had "been messing up his whole life," is tenuous at best.[2] Generally, unless a defendant opens the door with evidence of his good character, bad character evidence is inadmissible. *Jones v. State,* 257 Ga. 753, 758 (363 SE2d 529) (1988). Moreover, cross-examination alone, without a record of the conviction, is insufficient to impeach a witness by prior conviction. *O'Toole v. State,* 258 Ga. 614, 616 (4) (373 SE2d 12) (1988); see also *Tam v. State,* 225 Ga. App. 101, 102-103 (2) (483 SE2d 142) (1997) (the State bears the burden of assuring that similar transaction evidence is properly admitted). The State's inquiry regarding Woods' pending charge was likewise suspect. *Williams v. State,* 197 Ga. App. 299, 300 (398 SE2d 285) (1990) (proof of conviction, not accusation is required to show general bad character). A jury charge on "impeachment by conviction of a crime of moral turpitude" only compounded this exploitation of Woods' pro se status, inasmuch as the State failed to provide adequate proof that Woods was convicted of such a crime. *Kimbrough v. State,* 254 Ga. 504, 505 (2) (330 SE2d 875) (1985).

Having considered the peculiar facts and circumstances of this case, we must conclude that the State failed to meet its burden of demonstrating that Woods' waiver of counsel was knowing, intelli-

---

[1] Woods informed the trial court that he initialed the statement in the waiver form indicating that he decided to represent himself at the assistant district attorney's direction.

[2] We observe that the jury was instructed to disregard the "bad faults" comment.

gent, and voluntary. *Hamilton*, 233 Ga. App. at 466-467 (1) (b). Nor can we say that this error was harmless. Woods was totally unprepared to defend himself and the evidence was not overwhelming. The only direct evidence against him was limited to Woods' former fiancee, who testified about the incident and her injuries. The State then presented as an expert the county victim assistance program director, who testified of the "high risk" that Woods would badly injure or kill the victim, in effect characterizing Woods as a "potential killer."

The record clearly shows that Woods indeed, stood "alone with no assistance or protection of his rights." Compare *Rutledge*, 224 Ga. App. at 670 (3). We fail to see that the trial judge indulged in every reasonable presumption against waiver. *Prater*, 220 Ga. App. at 508. Woods received little or no latitude in conducting his defense. The State indulged in liberal and unrestricted presentation of bad character evidence. Woods was confused about the charges, ill-equipped to handle the case, and inadequately warned beforehand of these dangers. *Prater*, 220 Ga. App. at 509. In these circumstances, we cannot conclude that Woods' conviction was independent of his alleged waiver of counsel. Id. We therefore remand for further proceedings consistent with this opinion.

*Judgment reversed. Johnson, C. J., and Smith, J., concur.*

DECIDED JANUARY 6, 1999.

*Virginia W. Tinkler*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, David M. Zagoria, W. Cliff Howard, Assistant Solicitors*, for appellee.