## A99A0321. SIMPSON v. THE STATE.
(517 SE2d 830)

BARNES, Judge.

A jury found Clenard Simpson guilty of theft by taking, theft by receiving stolen property, giving a false name, possession of open container, license revocation, and no proof of insurance. Simpson appeals, contending (1) he did not knowingly and intelligently waive his right to counsel; (2) his claim of ineffective assistance of counsel should not be barred because he did not knowingly and voluntarily waive his right to counsel; (3) he received ineffective assistance of counsel; and (4) the trial court erred by not inquiring into the results of a court-ordered psychiatric evaluation of his competency.

1. Simpson claims he did not knowingly and intelligently waive his right to counsel because the trial court failed to advise him (1) of the hazards arising from an ignorance of the rules of evidence, (2) that he would be bound by the same rules of evidence as a lawyer, (3) that he would not be allowed to argue ineffective assistance of counsel on appeal, (4) that his appointed counsel would not be able to speak, and (5) of the higher probability of conviction if he represented himself.

In this case, the record shows that appointed counsel was provided to Simpson on July 16, 1997. On December 3, 1997, Simpson's counsel moved for permission to withdraw because Simpson told her the day before that she was terminated, he did not want to talk with her, he did not want her to say anything during his trial, and he would represent himself if the court did not give him time to hire another lawyer.

When Simpson's case was called for trial on June 22, 1998, Simpson appeared with his appointed counsel who reminded the judge that Simpson had terminated her in December 1997. She advised the trial court that she had talked with Simpson on other occasions since that time and his position had not changed. She further explained that Simpson wanted to represent himself, that he did not want her to say one word in his trial, and that he did not want her to file any papers, such as jury charges or voir dire questions, on his behalf. The trial court then asked Simpson if he agreed with the representations of his appointed counsel, and Simpson replied that he did. The trial court also inquired about Simpson's education and learned that Simpson had a bachelor's degree in computer engineering from the University of Texas.

The trial court advised Simpson that he had the right to represent himself even though "[i]t's considered to be extraordinarily unwise to do so." It also told his appointed counsel to remain at the counsel table and be available to answer any questions Simpson may choose to ask her during the trial. At the trial court's request, the

State explained the maximum and minimum penalties for each of the charges against Simpson. Simpson was advised that his previous convictions would require the court to give him a 20-year sentence if he were convicted of either theft by receiving or theft by taking, but that the court could probate any portion of the 20-year sentence it deemed appropriate. The trial court also explained the possible sentences Simpson was facing, and Simpson acknowledged that he understood his potential sentences. The court also learned that Simpson was familiar with the court system as a result of previous convictions for burglary, possession of cocaine, theft by receiving an automobile, and driving under the influence.

The trial court then inquired about the State's plea offer and explained the offer, as well as the sentencing process for a guilty plea, to Simpson. Simpson responded that he would like to enter a non-negotiated guilty plea and requested assistance from his appointed counsel to prepare the guilty plea paperwork. After the paperwork was completed, the State summarized the evidence supporting the guilty plea and requested the court to sentence Simpson to serve three years in prison. The defendant responded by telling the court that he did not agree with the sentence recommended by the State and that he wanted "credit for time served." The trial court asked the defendant if he meant released on time served, and the defendant agreed that he did. The trial court then asked, "Do you see why you need a lawyer?" and Simpson responded that he did before continuing his argument as to why he should be released on time served. The trial court explained at length the reasons why it would not release him on time served, but would instead sentence him to three years with credit for the time he already served waiting for trial if he entered a negotiated guilty plea. The defendant then replied that he would not agree to be sentenced to three years, that he would rather go to trial and receive a twenty-year sentence. Before starting jury selection, the trial court clarified again that Simpson wanted to represent himself and that his appointed counsel would sit at counsel table and be available for his use throughout the trial.

The first day of Simpson's trial concluded with the selection of the jury. On the second day of his trial, Simpson appeared in his prison clothes and refused to change into civilian clothes at the request of both the court and his appointed counsel, who explained the prejudice that could result. The court clarified again that he wanted to represent himself and that he understood his appointed counsel would be available to him throughout the trial. When the court also advised him, based on additional information presented by the State, that he faced a minimum sentence of three years if he were

convicted of either theft charge, Simpson elected to proceed with the trial.

Before the jury was brought in on the second day of Simpson's trial, his appointed counsel told the trial court:

> Your Honor, I have talked repeatedly with Mr. Simpson. I have all but gotten on my knees in terms of him not representing himself and also in terms of him insisting on wearing his jail clothes. I have advised him that it is extremely prejudicial for the jury to see him in his jail clothes. It is extremely dangerous not to file any charges, not to file any papers, not to be represented by counsel. He has — it appears that he understands the risk he's taking, and it is his sole decision not to be represented by counsel.

She concluded by asking Simpson if these statements were correct, and he replied that they were.

During his trial, Simpson did not make an opening or closing statement, cross-examine witnesses, or present any defense witnesses, including himself. He also refused to submit the jury charges prepared by his appointed counsel.

In *Clarke v. Zant*, 247 Ga. 194, 197 (275 SE2d 49) (1981), the Supreme Court held that in all future cases,

> the record should reflect a finding on the part of the trial court that the defendant has validly chosen to proceed pro se. The record should also show that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel.

Whether there has been an informed and intelligent waiver of a defendant's right to counsel depends upon the peculiar facts and circumstances of each case. *Callahan v. State*, 175 Ga. App. 303, 304 (333 SE2d 179) (1985).

In this case, the record shows that Simpson was aware of his right to counsel and that he clearly wanted to proceed without counsel. Thus, the issue before us is whether the record shows he was adequately informed about the dangers of proceeding without counsel.

Simpson argues the record does not show that he was adequately advised about the dangers of proceeding pro se because the trial court did not provide him with the same information that supported a valid waiver of a defendant's right to counsel in other cases. See *Wright v. State*, 222 Ga. App. 320, 321-322 (2) (474 SE2d 121) (1996) (defendant advised that he must abide by rules of evidence and that he would not be allowed to argue ineffective assistance of counsel on appeal); *Prater v. State*, 220 Ga. App. 506, 509 (469 SE2d 780) (1996)

(judgment reversed because defendant not told the nature of the charges, the range of allowable punishment, and possible defenses); *Shavers v. State*, 179 Ga. App. 45, 46 (1) (345 SE2d 134) (1986) (defendant advised of hazards arising from ignorance of the rules of evidence and a higher probability of conviction).

The Supreme Court recently rejected a similar argument in *Wayne v. State*, 269 Ga. 36, 37-38 (2) (495 SE2d 34) (1998), finding "it is not incumbent upon a trial court to ask each of the questions set forth in *Prater*." Id. at 38. Instead, the record must show only "that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." Id.

Based on *Wayne*, supra, we find the Supreme Court has decided against specific guidelines outlining information that must be provided to defendants in order to demonstrate that they were adequately advised of the dangers of proceeding pro se. Instead, the analysis of whether a defendant has been sufficiently warned about the dangers of self-representation will turn on the peculiar facts and circumstances of each case. *Clarke*, supra, 247 Ga. at 197.

In this case, Simpson acknowledged that he had an ongoing dialogue with his appointed counsel about the dangers of representing himself and that he understood the risk he was taking by representing himself. The trial court also advised him that it would be "extraordinarily unwise" to represent himself and that he had excellent and competent counsel available to assist him.

Based on the facts and circumstances of this case, we find that Simpson knowingly and intelligently waived his right to counsel. See *Mock v. State*, 163 Ga. App. 320, 321-322 (293 SE2d 525) (1982); *Evans v. State*, 192 Ga. App. 832, 833 (2) (386 SE2d 712) (1989). "Intelligent waiver and foolishness are not mutually exclusive," and a defendant's right to counsel "does not include the right to manipulate, whether consciously or capriciously, the state's attempt in good course to prosecute him for the offense." *Mock*, supra, 163 Ga. App. at 321-322. Simpson was advised of his right to counsel and provided with counsel, yet he chose to ignore the advice of both the trial court and his appointed counsel and to represent himself. As a result, we find no merit in Simpson's first two enumerations of error.

2. We cannot consider Simpson's claim that he received ineffective assistance of counsel because it has been waived not once, but twice. Simpson waived his right to assert ineffective assistance of counsel when he chose to represent himself. *Mullins v. Lavoie*, 249 Ga. 411, 412-413 (290 SE2d 472) (1982). His appellate counsel waived it again by filing a timely notice of appeal without first raising this issue in the trial court through a motion for new trial. *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996); *Russell v. State*, 230 Ga. App. 546, 550 (5) (497 SE2d 36) (1998).

3. In his remaining enumeration of error, Simpson claims the trial court erred by failing to inquire into the results of a psychiatric evaluation ordered by the court at the request of Simpson's appointed counsel. He does not contend that he was incompetent to stand trial or that the results of this evaluation show that he was incompetent. Instead, he asserts that the trial court should have made an inquiry because the defendant argued that he should not be sentenced to prison if he entered a guilty plea because his daughter had "died this year" and he had already spent 13 months in jail while waiting for his trial. On appeal, Simpson argues that "[i]t is unknown to what degree, the death of [his] daughter affected [him]."

The record shows that Simpson's appointed counsel moved the court to order a psychiatric evaluation on the same day that she also filed her motion to withdraw as counsel for Simpson. The motion did not include an outline of the facts underlying the request for a psychiatric evaluation; instead, it set forth the issues to be inquired into in the examination, such as whether Simpson could distinguish between right and wrong and comprehend the nature of the charges against him. The trial judge issued an order granting the motion on the same day that it was filed. This order does not explain why an evaluation of Simpson's mental condition was needed.

The results of the court-ordered psychiatric evaluation are not in the record. However, on the first day of Simpson's trial, six months later, the trial court asked if a psychiatric evaluation was needed when Simpson was apparently amused by the discussions about whether his appointed counsel should sit beside him or on the bench behind him. Both Simpson and the State advised the trial court that the evaluation had already been performed. The trial court then told the defendant: "My impression, I think you're a little too smart. I think you'll outsmart yourself if you're not careful because you're an educated man, and you're acting like a child." The trial court did not ask about the results of the evaluation, and none of the parties volunteered this information to the court. However, the trial court may have reviewed or recalled the results of Simpson's psychiatric evaluation after it was told that the evaluation had already been performed, and this type of activity would not appear in the transcript.

We find no merit in this enumeration. A trial judge is not obligated to inquire into the results of a psychiatric evaluation when it issues an order for the evaluation at the request of the defendant. Cf. *Strong v. State*, 263 Ga. 587, 590 (5) (436 SE2d 213) (1993). Instead, a trial court is obligated to inquire into the issue of a defendant's competency to stand trial if evidence of incompetence manifests itself during the proceedings. *Singleton v. State*, 194 Ga. App. 423, 424 (4) (390 SE2d 648) (1990).

In this case, there is no evidence in the record that would have

required the trial court to make a sua sponte inquiry into Simpson's competency. The mere fact that the trial court asked the parties if a psychiatric evaluation was needed before allowing a defendant to proceed pro se does not create a competency issue. See *Strong*, supra, 263 Ga. at 590. Likewise, Simpson's request for sentencing leniency if he were to plead guilty does not demonstrate a competency issue.

Finally, by failing to put the results of the psychiatric testing in the record for our review,[1] Simpson has failed to demonstrate that the trial court's alleged error was harmful. See *Polley v. State*, 203 Ga. App. 825, 827 (4) (418 SE2d 107) (1992) ("Harm as well as error must be shown to warrant reversal."). As we have previously noted, the trial court may have silently reviewed the test results or recalled that the test results showed that Simpson was competent to stand trial.

*Judgment affirmed. Blackburn, P. J., and Senior Appellate Judge Harold R. Banke concur specially.*

BLACKBURN, Presiding Judge, concurring specially.

I fully concur with the excellent opinion authored by Judge Barnes. I write separately because this case uniquely demonstrates the level to which the protection of criminal defendants has risen by court rulings on criminal procedure. As the majority analysis demonstrates, we even place the responsibility to ensure the defendant does not harm himself upon the State. Criminal prosecution has evolved into a gauntlet of defendants' "rights" through which the State must pass. While every other citizen is charged with knowledge of the law and with a duty not to injure himself, we do not judge criminal defendants by this same standard.

They often manipulate the system, as Simpson has attempted to do. This college graduate refused counsel. However, counsel was still required to remain at the defendant's disposal throughout the trial at State expense. After Simpson's conviction, he appealed, based solely on his own poor choices for which he seeks to blame the State. He caused additional taxpayers' resources to be expended in attempting to correct his own errors. The case had an appropriate result based on the evidence.

After conviction, Simpson began the appeal process. Those who are on bond, pending appeal, remain free and are not punished until a ruling has been made on the appeal. Incarcerated defendants often have free legal services, a law library, and plenty of time. The process is often initiated whether or not the trial court committed error, for

---

[1] In his brief before this court, Simpson notes that the "results do not appear in the record," but makes no effort to explain their absence or his efforts to make them a part of the record.

there is sometimes no cost to the defendants, and they have nothing to lose.

Without question, the appellate courts must protect the rights of Georgia citizens by reviewing the actions of the trial courts and correcting errors where found. We should, however, seek to minimize the abuse of the appellate process which occurs routinely. In the handling of criminal prosecutions, the courts should hold defendants to the levels of knowledge and conduct one would expect from a reasonable, educated adult, and stop dealing with them on a level more appropriate for the juvenile courts. Criminal defendants are often dealt with like children, who are protected individuals. Defendants enjoy the status of "victim," as to criminal procedure, unless the State can prove otherwise. It is time for the appellate courts to treat adults as adults, even if they are criminal defendants, so that trial judges simply deal fairly with them with no parens patriæ responsibility.

I am authorized to state that Senior Appellate Judge Harold R. Banke concurs in this opinion.

DECIDED MAY 14, 1999.

*D. Kent Shelton*, for appellant.

*Patrick H. Head, District Attorney, Maria B. Golick, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Carolyn M. Hodges*, for appellee.