**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**September 9, 2020**

# In the Court of Appeals of Georgia

A20A1353. WRIGHT v. THE STATE.

REESE, Presiding Judge.

A Haralson County jury found Ashley Wright ("the Appellant") guilty of one count each of burglary in the first degree and criminal trespass.[1] The Appellant seeks review of the denial of her motion for new trial, arguing that the trial court abused its discretion by not appointing her new counsel and in finding that she made a knowing, intelligent, and voluntary waiver of her right to counsel. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following facts. On or about June 26, 2016, Andrew Chandler and a friend traveled

---

[1] See OCGA §§ 16-7-1 (b); 16-7-21 (b).

[2] See *Martin v. State*, 349 Ga. App. 656, 656-657 (1) (825 SE2d 227) (2019).

to the home of A. C., the victim. They looked around, and after noticing that no one was there, broke a window in the home and removed various electronics. They left A. C.'s home and walked to the home of Chandler's uncle where the Appellant lived. Chandler showed the Appellant the items he had removed from A. C.'s home and told the Appellant that he had seen "a couple of big-screen TVs" there. At approximately 9:30 p.m. that same day, the Appellant went to A. C.'s home with Chandler and two other men. They found a gun safe in the home and removed items including guns and laptops.

During the investigation of the incident, the Tallapoosa Police Department obtained a search warrant for the Appellant's home. While executing the search, the police found items that had been reported missing from A. C.'s home, including guns, jewelry, money, clothing, and shoes. At trial, Chandler testified that he, the Appellant, and two men had gone into A. C.'s home and removed items from the house.

Following her conviction, the Appellant, through appellate counsel, filed a motion for new trial. After a hearing, the trial court denied the Appellant's motion, and this appeal followed.

The Sixth Amendment guarantees effective assistance of counsel, not preferred counsel or counsel with whom a meaningful relationship

2

can be established. An indigent defendant is not entitled to have [her] appointed counsel discharged unless [s]he can demonstrate justifiable dissatisfaction with counsel, such as conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between counsel and client. Where a defendant does not have a good reason for discharging [her] court-appointed attorney, the trial court does not err in requiring [her] to choose between representation by that attorney and proceeding pro se. We evaluate a trial court's decision regarding whether to appoint new trial counsel for an indigent defendant under an abuse of discretion standard.[3]

With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant argues that the trial court abused its discretion by not appointing her another attorney after she showed there was a lack of communication and a conflict with her trial attorney. We disagree.

The record shows that the trial court addressed the Appellant's concerns about her court-appointed attorney at two pre-trial hearings, the first on October 8, 2018, and the second on October 22, 2018. At the October 8 hearing, trial counsel told the trial court that he had been appointed to represent the Appellant on August 19, 2016.

---

[3] *Holsey v. State*, 291 Ga. App. 216, 218-219 (2) (661 SE2d 621) (2008) (citations and punctuation omitted).

3

He had represented her on another case, and bench warrants had been issued against her in this case "a couple of times[.]" He further stated that he had "attempted over the last two years to meet with [the Appellant] and speak with her about the case. She has changed phone numbers three times. My phone number is the same. I am very easy to find. I have yet to be able to sit down and actually talk to her about this case." Trial counsel informed the trial court that the Appellant was incarcerated in Carroll County, and that on October 7, 2018, he had visited her in jail.

At the hearing, the Appellant told the trial court that "[o]n numerous occasions [she had] texted and called [trial counsel] and he [did not] return [her] calls." She requested another attorney because "he [was] not representing [her]" and trial counsel had failed to help her "at all." When the trial court asked the Appellant if she had evidence that she wrote trial counsel or had communicated with him by phone, the Appellant responded, "I don't." Further, the Appellant admitted that she had spoken to trial counsel when he called her at her grandmother's home.

At the hearing on October 22, trial counsel told the trial court that he did not see any "legal issue[ ]" with the search warrants that had been granted and that he had told the Appellant that it was "not [his] job to file frivolous motions before the [trial c]ourt." In its order denying the Appellant's motion for new trial, the trial court found

that at the pre-trial hearings, the Appellant had not been "able to provide any information to show that she communicated with her appointed legal counsel and [that] he failed to respond to her."

"A breakdown in communication between a defendant and his counsel must be extreme before it mandates that the trial court remove appointed counsel."[4] It follows that "tension in the attorney-client relationship, disagreements over trial strategy, and a general loss of confidence or trust in counsel are insufficient, without more, to demonstrate the type of complete breakdown in communication necessary to mandate the removal of counsel from the case."[5]

Here, sitting as the fact finder, the trial court could disbelieve the Appellant's explanation and rely on the statements proffered by trial counsel regarding their communications and interactions.[6] Also, the Appellant did not provide any evidence of her written or telephonic attempts to reach trial counsel. Consequently, the trial

---

[4] *Mason v. State*, 325 Ga. App. 609, 615 (2) (b) (754 SE2d 397) (2014) (emphasis omitted).

[5] Id.

[6] See *LaGon v. State*, 334 Ga. App. 14, 18 (1) (778 SE2d 32) (2015).

5

court did not abuse its discretion in denying her request for new court-appointed counsel.

2. The Appellant argues that she did not knowingly, intelligently, and voluntarily waive her right to be represented by counsel. We disagree.

> Although a criminal defendant has a Sixth Amendment right to assistance of counsel at trial, the defendant also has the constitutional right to represent [her]self, as long as [s]he voluntarily, knowingly, and intelligently elects to waive the right to counsel. To establish a valid waiver, the trial court must apprise the defendant of the dangers and disadvantages inherent in representing [her]self so that the record will show that [s]he knows what he is doing and [her] choice is made with eyes open.[7]

It follows that "[a] defendant's waiver of [her] right to counsel is valid if the record reflects that the defendant was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver."[8]

> It is not required that the trial court probe the defendant's case and advise the defendant as to legal strategies to ensure that a waiver is intelligently made. Indeed, the defendant's technical legal knowledge is

---

[7] *Renfro v. State*, 348 Ga. App. 615, 616-617 (2) (824 SE2d 75) (2019) (citations and punctuation omitted).

[8] Id. at 617 (2) (citation and punctuation omitted).

irrelevant to the question of whether [s]he validly waives his right to be represented by counsel. The test is not whether the accused is capable of good lawyering, but whether [s]he knowingly and intelligently waives [her] right to counsel. Although the State has the burden of showing that a defendant received sufficient information and guidance from the trial court to make a knowing and intelligent waiver of the right to trial counsel, a trial court's ruling on this issue is reviewed only for an abuse of discretion.[9]

The record shows that at the October 22 hearing, the trial court conducted a *Faretta*[10] colloquy with the Appellant. The trial court began the hearing by asking the Appellant a series of questions, regarding the number of years of school she had completed and her ability to read, write, and understand or speak English. The Appellant responded that she had completed the 11th grade and that she could read, write, speak, and understand English. After stating to the trial court that the search of

---

[9] *Renfro*, 348 Ga. App. at 617 (2) (citations and punctuation omitted).

[10] See *Faretta v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975); *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2008) ("[B]oth the federal and state constitutions guarantee a criminal defendant the right to self-representation. To be valid, a defendant's waiver of [her] right to be represented by counsel must be knowingly and intelligently made. Under *Faretta* the trial court must apprise the defendant of the dangers and disadvantages inherent in representing [her]self so that the record will establish that [s]he knows what [s]he is doing and [her] choice is made with eyes open.") (citations and punctuation omitted).

her family home was illegal to which the trial court responded that trial counsel had "decision-making authority" as to what motions should be filed, the Appellant asked if she could "just throw [her]self at the mercy . . . of the [trial c]ourt[.]"

The trial court explained that the Appellant could enter a blind plea "in which there [would be] no [sentencing] recommendation." The Appellant responded that she had "a son at home," and she had already served seven and a half years on a prior conviction. The trial court advised the Appellant that she would have to make a decision regarding whether she wanted to go to trial. The Appellant asked if her bench warrant for failing to appear could be "dropped" so that she could go to her mother's home and spend time with her family. The trial court denied the Appellant's request, explaining that when the Appellant failed to appear, there was a jury waiting for her and "[she] did not show up[.]" The trial court continued with the *Faretta* hearing and asked the Appellant if she understood "that self-representation may be bad for you, may be a detriment to you. It may hurt you." The Appellant responded: "Yes, sir." The trial court continued: "Do you understand that you are entitled to no special treatment by the [trial c]ourt if you [re]present yourself?"

[A by the Appellant]: Yes, sir.

[Q by the trial court]: Do you understand that you must follow all of the technical rules and substantive law, criminal procedure, and evidence for making motions, objection, and presentation, jury selection, and arguments even if you do not know how those rules apply; do you understand that?

[A]: Yes, sir.

[Q:] Do you understand that you will have to abide by the same rules that it took years for lawyers to learn?

[A:] Yes, sir.

[Q]: Do you understand that if you represent yourself you are assuming full responsibility for your defense?

[A:] Yes, sir.

[Q]: Do you understand that you may miss important defenses to the case because of your lack of knowledge of the law?

[A]: Yes, sir.

[Q]: Do you understand that even if you have some knowledge of the law you will lose the benefit of an independent perspective of an attorney in analyzing, reviewing, and presenting this case in its most effective way?

[A]: Yes, sir.

[Q]: Do you understand if you are found guilty you may not be able to present the case in a manner to obtain the most favorable sentence?

[A]: Yes, sir.

[Q:] Do you understand that if you are in custody, which you are, your access to the district attorney will be reduced making it . . . more difficult to defend yourself because you will have less of a chance to work out a favorable resolution?

9

[A]: Yes, sir.

[Q]: Do you understand that the prosecution will be represented by an experienced and skilled attorney? In fact, he is the district attorney of the county; do you understand that?

[A]: Yes, sir.

[Q]: Do you understand that the prosecution's attorney will treat you just as he would treat any other attorney? The prosecutor will not go easy on you just because you represent yourself; do you understand that?

[A]: Yes, sir.

[Q]: Do you understand that you will not receive any special treatment or help from the [trial c]ourt?

[A]: Yes, sir.

[Q]: Do you understand that if you behave in a disruptive manner in the courtroom the [trial c]ourt can terminate your self-representation?

[A]: Yes, sir.

[Q]: Do you understand if you get convicted you cannot claim your own incompetency as a basis for an appeal?

[A]: Yes, sir.

[Q]: Do you understand that you will not be give any extra time for preparing the case for trial simply because you are representing yourself?

[A]: Yes, sir.

[Q]: If you are incarcerated, which you are, do you understand that your ability to investigate, research, and prepare your defense will be severely limited?

[A]: Yes, sir.

[Q]: Do you understand that if you have a lawyer[,] the lawyer would not be subject to those limitations?

At this juncture in the hearing, trial counsel stated that the Appellant told him that she wanted to "take [a] plea instead of finishing the colloquy." When questioned as to the type of plea, the Appellant responded: "A blind plea would be okay."

The trial court conducted a plea hearing during which the prosecutor questioned the Appellant about entering a plea. During questioning by the prosecutor, the Appellant stated "I think I just want to do the trial." After trial counsel confirmed with the Appellant that she wanted to go to trial, trial counsel asked the trial court to continue with the *Faretta* hearing. The trial court asked the Appellant if she wanted trial counsel to represent her, to which she responded: "Can I get another attorney?" The trial court denied her request, stating that the Appellant had not provided "sufficient reason" to obtain another attorney. The trial court paused the proceedings, then continued with the *Faretta* hearing. After informing the Appellant that she had the right to the effective assistance of counsel and that an attorney would be appointed to her if she could not afford one, the trial court asked her a series of questions about her understanding of the role of an attorney during a trial. The

11

Appellant responded affirmatively to the trial court's questions as to whether she understood the charges against her and the maximum penalty if convicted.

When asked if she gave up her constitutional right to have an attorney represent her, the Appellant responded: "No. I'm not waiving that right." The trial court asked the Appellant if she wanted trial counsel to represent her during trial and she responded: "I do." At that point, the trial court found that the Appellant had made a "knowing[ ] and intelligent[ ] and voluntary decision to have counsel represent her in this trial." The Appellant responded that she would "just represent herself." The trial court responded: "I'm confused." The following colloquy ensued:

[A by the Appellant]: I changed my mind.

. . .

[Q]: Do you specifically waive your right to have a lawyer represent you in this case?

[A]: Yes.

[Q]: Do you understand that?

[A]: Yes, sir.

[Q]: Do you know what that means?

[A]: I do.

[Q]: After all of that questioning and everything you still want to represent yourself; is that correct?

[A]: That's correct.

[Q]: All right[, t]he [trial c]ourt has advised the [Appellant] with the charges against her, the consequences that she faces if found guilty, the advantages of being represented by a lawyer, the disadvantages of self-representation. The [trial c]ourt has inquired into [the Appellant's] background, training, education, and mental state. The [trial c]ourt finds that [the Appellant] has made a knowing[ ] and intelligent[ ]and voluntary waiver of the right to counsel and is hereby granted the opportunity to represent herself.

The trial court then granted trial counsel's motion to withdraw from the case. The jury trial commenced the following morning without objection from the Appellant, and the Appellant represented herself throughout the entire trial.

This Court has utilized a six-part test to determine if a defendant validly chose to proceed pro se, specifically:

such waiver must be made with an apprehension of [1] the nature of the charges, [2] the statutory offenses included within them, [3] the range of allowable punishments thereunder, [4] possible defenses to the charges and [5] circumstances in mitigation thereof, and [6] all other facts essential to a broad understanding of the matter.[11]

The Georgia Supreme Court has stated that although it "would be helpful" if the trial court made all the inquires outlined in the six-part test, "it is not incumbent upon a

---

[11] *McDaniel v. State*, 327 Ga. App. 673, 675 (1) (761 SE2d 82) (2014) (citation and punctuation omitted).

13

trial court to ask each of the questions[.] The record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver."[12] "Nor is it required that the trial court probe the defendant's case and advise the defendant as to legal strategies to ensure that a waiver is intelligently made. Indeed, the defendant's 'technical legal knowledge' is irrelevant to the question of whether [s]he validly waives [her] right to be represented by counsel."[13] "The test is not whether the accused is capable of good lawyering — but whether [s]he knowingly and intelligently waives [her] right to counsel."[14]

Based on the foregoing, the trial court conducted a thorough *Faretta* hearing and permitted the Appellant to seek clarification and respond to the trial court's questions.[15] The trial court discussed the nature of the charges against the Appellant,

---

[12] *Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998) (defendant made a knowing, intelligent, and voluntary waiver of his right to counsel after he expressed dissatisfaction to the trial court about his court-appointed counsel, he made repeated requests for self-representation, and the trial court repeatedly informed the defendant about the dangers of representing himself); see also *Evans*, 285 Ga. at 68-69.

[13] *Evans*, 285 Ga. at 69.

[14] *Wayne*, 269 Ga. at 38 (2).

[15] See *Simpson v. State*, 238 Ga. App. 109, 112 (1) (517 SE2d 830) (1999) ("Intelligent waiver and foolishness are not mutually exclusive, and a defendant's right to counsel does not include the right to manipulate, whether consciously or

including the statutory charges within the offenses as well as the range of possible punishments, and the dangers of self-representation.[16] Consequently, the trial court did not abuse its discretion in finding that prior to the start of her trial, the Appellant "chose to represent herself at trial and that her selection was done knowingly, freely[,] and intelligently."[17] Therefore, the Appellant's argument with regard to her second enumerated error is without merit.

*Judgment affirmed. Markle and Colvin, JJ., concur*.

---

capriciously, the state's attempt in good course to prosecute [her] for the offense.") (citation and punctuation omitted).

[16] See *Wayne*, 269 Ga. at 38 (2).

[17] Cf. *McDonald v. State*, 296 Ga. 643, 648-649 (3) (770 SE2d 6) (2015) (Defense counsel's confirmation, on the record, with the defendant present, that his client wished to continue to be represented by him showed that the defendant had abandoned his request to represent himself.); see also *Herrington v. State*, 332 Ga. App. 828, 830 (1) (775 SE2d 195) (2015) (Defendant's colloquy with the trial court prior to trial showed that he had changed his mind and abandoned his request to represent himself.).