### A01A2219. MIDDLETON v. THE STATE.
(563 SE2d 543)

PHIPPS, Judge.

Glen Middleton appeals his conviction for burglary. He contends the trial court erred by allowing him to proceed to trial without counsel and without assuring that he made a voluntary, knowing, and intelligent waiver of his right to counsel. We agree and reverse.

1. The constitution guarantees the right to counsel to an accused in any prosecution that could result in imprisonment.[1] Although the accused may waive this right, the waiver is valid only if it is made with an understanding of (1) the nature of the charges, (2) any statutory lesser included offenses, (3) the range of allowable punishments for the charges, (4) possible defenses to the charges, (5) circumstances in mitigation thereof, and (6) all other facts essential to a broad understanding of the matter.[2] To determine whether an accused has knowingly and intelligently waived counsel, a trial judge "must investigate as long and as thoroughly as the circumstances of the case before him demand."[3] Each case must be determined on its own unique facts and circumstances.[4]

In *Clarke v. Zant*,[5] our Supreme Court held that "the record should reflect a finding on the part of the trial court that the defendant has validly chosen to proceed pro se. The record should also show that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel."[6] The

---

[1] *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975).
[2] *Rutledge v. State*, 224 Ga. App. 666, 669 (3) (482 SE2d 403) (1997).
[3] (Citations and punctuation omitted.) Id.
[4] Id.
[5] 247 Ga. 194 (275 SE2d 49) (1981).
[6] Id. at 197.

trial court need not use any "magic words" to determine whether a waiver of counsel is valid, as long as the facts and circumstances of the case show that the defendant has been given sufficient information and guidance to make a knowing and intelligent decision whether to proceed pro se.[7] The State has the burden of demonstrating from the record that the defendant received such information and guidance.[8]

The State has not met its burden in this case. Although the trial court told *the jury* at one point that it had "questioned Mr. Middleton at length and [was] satisfied that he knows what he's doing and that he's capable of conducting his defense the best he can," nothing in the record shows that the trial court — or anyone else — ever warned *Middleton* about the dangers of proceeding pro se or explained to him the nature of the charges against him, the potential penalties he faced, and possible defenses or mitigating circumstances. Likewise, aside from the court's comments to the jury, the record contains no findings from the court that Middleton's waiver of counsel was knowing, informed, and intelligent.

The State relies on *Brooks v. State*,[9] in which we found that a defendant had validly waived counsel even though the record did not show that the trial court had warned him of the dangers of proceeding pro se or found his waiver to be valid. We reached this conclusion because the record showed that (1) the prosecutor had reviewed with the defendant a pretrial waiver form explaining his right to counsel and the dangers of proceeding pro se; (2) the defendant was familiar with the legal system and legal representation as a result of his three prior criminal convictions; and (3) the defendant had stand-by counsel who assisted him at least through jury selection.[10] Although the facts of this case bear some superficial similarity to those of *Brooks*, the record is not sufficient to establish that Middleton appreciated the nature of the charges and knew the allowable punishments, the lesser included offenses, the possible defenses to the charges, and circumstances in mitigation.

First, although the trial transcript shows that Middleton had several prior convictions for various crimes, the record does not show whether he pled guilty or whether those convictions followed jury trials. Therefore, even if we were to credit Middleton with experience in criminal procedure because of those convictions, we cannot ascertain

---

[7] See, e.g., *Simpson v. State*, 238 Ga. App. 109, 112 (1) (517 SE2d 830) (1999); *Rutledge*, supra at 670.

[8] *Hamilton v. State*, 233 Ga. App. 463, 467 (1) (b) (504 SE2d 236) (1998).

[9] 243 Ga. App. 246, 248 (1) (532 SE2d 763) (2000).

[10] Id. at 249.

from this record whether the experience was helpful within the context of the six factors listed in *Rutledge*.

Second, the pretrial waiver form given to the defendant in *Brooks* was related to the waiver of counsel at a guilty plea and included some of the warnings and advice relevant to a waiver of defense counsel at trial.[11] Here, the State relies on a waiver form used by the police to advise people in custody of their *Miranda* rights and secure a waiver of those rights before taking a statement. The information and advice in that form differ completely from the warnings and advice given to an accused before he can validly waive his right to counsel at trial. In fact, the only mention of court in the *Miranda* rights warning form states that any statement made may be used against Middleton in court and that if he could not afford a lawyer the court would appoint one for him. This rights warning form does not contain the warnings and advice necessary to inform a defendant who contemplates representing himself at trial of the nature of the charges, the lesser included offenses, the punishments allowed, the possible defenses, the mitigating circumstances, or any other matters necessary to a broad understanding of the case.[12]

Third, although an attorney was appointed to advise Middleton at trial, it is apparent from the record that the attorney's role was minimal and limited largely to such mechanical functions as introducing photographs into evidence and swearing Middleton's sole defense witness.

The circumstances of this case differ from those in *Brooks* and do not require the same result. Because the record here does not demonstrate a voluntary, knowing, and intelligent waiver of Middleton's right to counsel, the trial court erred by allowing Middleton to proceed to trial without counsel. Because *Brooks* is distinguishable on its facts, this case does not present an opportunity to consider, as the special concurrence suggests, whether *Brooks* should be overruled.

2. We next consider whether Middleton was harmed by the trial court's error. To establish harmless error, the State has the burden of showing beyond a reasonable doubt that the error did not contribute to the verdict.[13]

The State argues that the error was harmless because the evidence against Middleton was strong. But strong evidence of guilt does not mean that the trial court's failure to establish a valid waiver of counsel was harmless error. We have repeatedly found that such error was *not* harmless where the record showed that the defendant

---

[11] Id.

[12] See *Rutledge*, supra at 669-670.

[13] See *Eiland v. State*, 246 Ga. 112, 116 (2) (268 SE2d 922) (1980); *State v. Hightower*, 236 Ga. 58, 60 (222 SE2d 333) (1976).

did not mount an able defense — even though the evidence of guilt was ample.[14]

The State's evidence against Middleton consisted of Middleton's statement to the police that Daniel Littlejohn approached him about assisting in a burglary, drove him to a mobile home, and pried open the door with a tire iron, after which both men carried various items out of the home. The State also presented the testimony of Littlejohn, who admitted to planning and being the principal actor in the burglary, but stated that Middleton also participated actively.

Middleton failed to present any coherent defense to this evidence. He apparently saw the self-incriminating statement for the first time only moments before trial, and despite his contentions that he had made the statement while "under the influence" and only because the police had misled him, he did not object that it was not voluntary. During his cross-examination of Littlejohn, Middleton apparently referred to Littlejohn's statement to the police, but he never tried to admit the statement into evidence or show its significance. Thus, the cross-examination was confusing and ineffective.[15] Middleton did argue in closing that he merely helped Littlejohn sell a television after the burglary took place. But, as the trial court plainly instructed the jury, and as any attorney would have known, closing arguments are not evidence. Middleton neither took the stand in his own defense nor offered any other evidence that might have supported his apparent "accessory after the fact" defense.

With the assistance of an attorney, Middleton might have conducted competent cross-examinations or presented evidence to support a defense. Or, if no such evidence could be found, an attorney might have recommended that Middleton plead guilty in exchange for a lesser sentence.[16] The very fact that the evidence against Middleton was strong shows that counsel was needed and makes the court's failure to advise Middleton on the record of his right to counsel that much more harmful. Of course after being properly advised

---

[14] See *Raines v. State*, 242 Ga. App. 727, 730 (1) (531 SE2d 158) (2000) (reversal required where, despite "substantial" evidence of guilt, transcript "reflects Raines' inexperience in legal matters"); *Braswell v. State*, 240 Ga. App. 510, 511 (1) (523 SE2d 904) (1999) (no harmless error where transcript showed that defendant's "efforts at defending herself were minimal and misguided," even though State's evidence was "strong"); *Heard v. State*, 236 Ga. App. 625, 626-627 (513 SE2d 35) (1999) (physical precedent only); *Prater v. State*, 220 Ga. App. 506, 509 (469 SE2d 780) (1996) (although evidence against defendant was "ample," error was harmful because record showed defendant was "confused, disorganized, and ill-equipped for handling the case").

[15] The only evidence that came out on cross-examination that was even minimally helpful to Middleton was that Littlejohn testified at trial that the car they drove to the mobile home was burgundy, but Littlejohn had told the police that the car was blue.

[16] Middleton was sentenced to ten years in prison, while Littlejohn was sentenced to seven years.

on the record Middleton might have elected to make a valid waiver of counsel, but we cannot know.

Not only did Middleton fail to present any meaningful evidence in defense, but the trial court failed to give any jury charges that might have explained his defense. The trial court instructed the jury on mere presence at the scene, but that was *not* Middleton's theory of defense. His defense, at least as it appears from his closing argument, was that he was not at the mobile home but only helped Littlejohn sell the spoils later — that he was an accessory after the fact, not a party to the crime. While the trial court instructed the jury on party to a crime, the court did not tell the jury that a person cannot be both a party to the crime and an accessory after the fact — a charge that could have been crucial to Middleton's defense. Although Middleton failed either to show that he requested such a charge or to present evidence to support it, his failure is easily attributable to his lack of counsel. In any event, the absence of a jury charge that would have explained the legal basis for Middleton's defense compounded the harm he suffered.

Other instructions by the trial court further magnified the error. Although the trial court failed to establish on the record that Middleton had sufficient information to intelligently waive counsel, the court repeatedly told the jury that Middleton was embarking on a hazardous venture by proceeding pro se. For example, the court said that it had "forewarned" Middleton of the dangers of proceeding pro se; that it was "very skeptical" of self-representation; that it is "not always a good practice" to proceed pro se; that Middleton was acting "against the court's advice"; that it was "very difficult for a lay person to come into a courtroom and defend themselves"; and that self-representation was like "going into the operating room in a hospital and not knowing whether the folks in there are doctors . . . you take a chance." The court also told the jury that it was not the court's fault if Middleton did not "know the evidence" and did not "know how to conduct the trial of the case." And in its final charge, the court reminded the jury that it had "advised [Middleton] not to go to trial without benefit of counsel." By harping on the perils Middleton faced, the trial court planted a seed in the jurors' minds that he would not be able to defend himself adequately — which is precisely what happened.

Unfortunately, Middleton did not object to any of these prejudicial comments by the court, no doubt because he was unaware of their impropriety or of his opportunity to object. If the trial court had instructed Middleton on the record of the ramifications of proceeding pro se as thoroughly as it instructed the jury on what it thought was Middleton's folly, Middleton would have had the information he needed to make a valid, informed decision whether to proceed pro se.

Finally, in its charge on parties to a crime, the court told the jury that "obviously . . . Mr. Littlejohn is an accomplice." Middleton, without benefit of counsel, did not object to this statement, which further undermined — indeed, directly contradicted — his defense.

The record clearly shows that Middleton was unable, without counsel, to present any competent defense and that the trial court's repeated improper comments, not objected to by Middleton, contributed to this inability. The State did not carry its burden of showing that the trial court's error was harmless beyond a reasonable doubt. Because we cannot conclude that Middleton's conviction was "independent of his decision to represent himself,"[17] we reverse the judgment of the trial court and remand for a new trial.

3. Because we reverse the conviction and remand for a new trial, we need not address Middleton's remaining enumerations of error.[18]

*Judgment reversed. Blackburn, C. J., Pope, P. J., Smith, P. J., Miller and Mikell, JJ., concur. Barnes, J., concurs specially.*

BARNES, Judge, concurring specially.

Although I concur fully in Divisions 2 and 3 of the majority opinion and with most of the analysis in Division 1, I cannot concur fully in that Division because I believe reaching the result achieved by the majority requires overruling *Brooks v. State*, 243 Ga. App. 246 (532 SE2d 763) (2000). See id. at 253-258 (Barnes, J., dissenting).

DECIDED MARCH 29, 2002.

*Robert M. Goldberg*, for appellant.
*Richard G. Milam, District Attorney, Mark S. Daniel, Assistant District Attorney*, for appellee.

---

[17] (Citation and punctuation omitted.) *Raines*, supra.
[18] See *Braswell*, supra at 511 (2).