**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 20, 2014

# In the Court of Appeals of Georgia

A14A0674. MCDANIEL v. THE STATE.

BOGGS, Judge.

Danny McDaniel appeals from his convictions of mortgage fraud and theft by taking. He contends that he is entitled to a new trial, because (1) he did not knowingly and intelligently waive his Sixth Amendment right to counsel, and (2) the trial court abused its discretion by denying his request for a continuance to hire counsel. For the reasons explained below, we reverse and remand for a new trial.

1. Relying upon *Faretta v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975) and *Clarke v. Zant*, 247 Ga. 194 (275 SE2d 49) (1981), McDaniel asserts that the trial court failed to properly advise him of his rights under *Faretta*, and failed to make a finding as to whether he knowing and voluntarily waived his right to counsel. In the Supreme Court of Georgia's oft-cited opinion in *Clark v. Zant*, it

summarizes the protections afforded a defendant seeking to represent himself as follows:

> *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975), held that while a criminal defendant has an absolute right to counsel in any prosecution which could result in imprisonment, the accused also has a fundamental right to represent himself in a state criminal trial "when he voluntarily and intelligently elects to do so." *Faretta* at 806. *Faretta* also states at 835: "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "'he knows what he is doing and his choice is made with eyes open.'" *Adams v. United States ex rel. McCann*, 317 U. S. at 279 [63 SC at 242]. . . . "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case including the background, experience, and conduct of the accused. [Cit.]"

Id. 247 Ga. at 195-196. It then held "that in future cases, the record should reflect a finding on the part of the trial court that the defendant has validly chosen to proceed pro se. The record should also show that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel." Id. at 197.

2

Following the Supreme Court's opinion in *Clark v. Zant*, this court held:

> In order to establish a valid waiver, . . . such waiver must be made with an apprehension of [1] the nature of the charges, [2] the statutory offenses included within them, [3] the range of allowable punishments thereunder, [4] possible defenses to the charges and [5] circumstances in mitigation thereof, and [6] all other facts essential to a broad understanding of the matter.

(Citation and punctuation omitted.) *Prater v. State*, 220 Ga. App. 506, 509(469 SE2d 780) (1996). When a defendant argued that a new trial should be granted based upon an absence of evidence in the record showing each of these six factors, the Supreme Court clarified that while "it would be helpful, it is not incumbent upon a trial court to ask each of the questions set forth in *Prater*. The record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver. [Cits.]" *Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998). See also *State v. Evans*, 285 Ga. 67, 68-69 (673 SE2d 243) (2009).

(a) We find no merit in McDaniel's claim with regard to the trial court's alleged failure to make a finding that he knowingly and voluntarily waived his right to counsel. First, in *Brooks v. State*, 243 Ga. App. 246, 248 (1) (a) (532 SE2d 763) (2000), this court rejected an argument that "a trial judge's failure to articulate 'on the

3

record' a specific finding that a defendant knowingly waived his right to counsel is error per se, regardless of the facts and circumstances of a particular case." Id. A majority of this court concluded that "while such a finding is preferable, its omission is not error when the *record* as a whole demonstrates a defendant's knowing waiver. [Cits.]" (Emphasis in original.) Id. Additionally, this court has held that a trial court's determination of a knowing and voluntary waiver within an order denying a motion for new trial qualifies as a finding on the record. *Stevens v. State*, 199 Ga. App. 563, 566 (2) (405 SE2d 713) (1991). In this case, the trial court found, in a detailed written order denying McDaniel's motion for new trial, "that the Defendant knowingly and voluntarily waived his right to counsel after being apprised of the risks of self-representation."

(b) We now consider whether the particular facts and circumstances of this case show that McDaniel "was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver. [Cits.]" *Wayne*, supra, 269 Ga. at 38 (2). "The state has the burden of demonstrating that the defendant received sufficient information and guidance from the trial court to make a knowing and intelligent waiver of the right to counsel." (Citations, punctuation and footnote omitted.) *Cox v. State*, 317 Ga. App. 654, 655 (732 SE2d 321) (2012).

4

The record shows that McDaniel was arrested in September 2010 on charges relating to mortgage fraud and remained in jail following his arrest. On April 14, 2011, he was indicted for residential mortgage fraud and theft by taking. On May 24, 2011, the same day as his arraignment, McDaniel filed a three-page motion to proceed pro se and a two-page motion for discovery material under *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

In his motion to proceed pro se, McDaniel stated that he "originally had hired a local attorney to represent him in these allegations, and due to ineffective assistance in his representations, Defendant fired counsel;" that he "prefers to represent himself, rather than be subjected to more ineffective counsel representations, by either the Public Defender's office or a local '*Good*' attorney;" that he "has experience in self-representation in state courts in the past, [and] was a law clerk for 3 years in the Federal System, filing many appeals in the District and Circuit Courts, up, and, to[], the United State Supreme Court;" that "Defendants allegations are not complex, per se, and with the substantive evidence in support of his defense, he feels that upon certain pre-trial motions, these allegations should be dismissed. If not, Defendant is confident that he can survive a jury trial." He also asked for access to a law library and a copy of the Georgia Rules of Criminal Procedure.

The transcript of a June 28, 2011 status conference begins with the trial court determining that the State did not oppose McDaniel's motion to proceed pro se.[1] McDaniel then informed the trial court that he did not qualify for a public defender and did not wish to hire counsel. The trial court informed McDaniel that "[t]hese are serious charges obviously" with "serious consequences associated with being found guilty of those offenses," identified the particular charges against him, asked the State to outline the maximum possible sentences, inquired about McDaniel's legal training and learned that he had represented himself in a couple of jury trials involving felony offenses in Clayton County Superior Court, and informed him that he would be required to abide by the procedural rules, introduce evidence according to the rules of evidence, and make his own objections. Finally, the trial court advised McDaniel that it would consider appointing counsel to "sit as elbow counsel in order to assist the Court and help you. That's the term. You would still represent yourself but they can assist you." The status conference concluded with the State and McDaniel agreeing to explore plea options, and the trial court asking the State to investigate the adequacy of McDaniel's access to legal resources. The trial court stated at that time,

[1] The beginning of the status conference was not transcribed.

"What I'm going to do is I'm going to put this case again on our calendar for July 19 and at that time we'll go over in detail your *Faretta* rights."

In the July 19, 2011 status conference, McDaniel affirmed again that he had elected to represent himself. The trial court then inquired about the outcome of plea discussions, and the prosecutor informed the court that he

> went to see Mr. McDaniel at the jail and we spent actually a great deal of time together going over his case in detail. Probably as much detail as I have ever discussed a case with any pro se defendant as well as any attorney representing a client. I showed him all the paperwork that the State would be seeking to introduce and explained what each piece of paperwork meant. Mr. McDaniel knew what everything was and understood what the State was intending to do.

The State's attorney also advised McDaniel that it would seek a recidivist sentence and instructed him about the different ways it could prove the prior convictions. McDaniel understood their discussions about a recidivist sentence, and the State's attorney "felt like Mr. McDaniel understood it as well as anybody I've ever explained it to." In response to questioning by the trial court, McDaniel agreed with the State's summary of their meeting and acknowledged that he understood how the recidivist statute worked. The status conference concluded with the trial court agreeing that McDaniel should be granted access to the law library in the courthouse. It also

informed McDaniel that the case would be on the next criminal jury trial calendar beginning August 8, and set the case for another status conference on August 2. It did not, however, instruct McDaniel about the dangers of self-representation.

In the August 2 status conference, the trial court learned that McDaniel had not yet been granted access to the law library and continued the case from the August 8 jury trial calendar. Contrary to the assertions in the State's brief, the trial court did not state that it would "continue the case to the next trial calendar." It merely stated that it would "continue the case."

When the case was called for trial on September 19, 2011, McDaniel stated that he was not ready to proceed, because "I have pretrial motions that I was getting typed up for the Court which I brought in handwritten today. I didn't know I was going to be here today. I didn't get notice of any kind of court hearing."[2] The Court then stated that it would review handwritten pretrial motions that McDaniel had not yet typed and make sure they were filed-stamped. These motions included a "Special Demurrer Motion to Quash Indictment" and one for "Funds to Hire or Appointment of an Investigator to Aid in the Preparation of his Defense." After hearing argument from

---

[2] The record before us contains no evidence that McDaniel was notified of the September 19 trial date.

both the State and McDaniel, the trial court denied his motion regarding the indictment. With regard to his request for an investigator, McDaniel stated:

> The situation I have is I'm very limited, you know, being incarcerated as far as able to talk to any witnesses that I plan on bringing in for the trial.
>
> The other thing is that I just went through a divorce here when I first came in last year to the jail, which my ex-wife has control over a lot of the paperwork and other things that were on the Internet, information back and forth between me and the alleged victims.
>
> And I have witnesses that are not even in this state, actually live in the northern district of Florida. And I can't contact these people so I do need a help, and I'm not saying a lot of hours, but I do need the help of an investigator that can make those calls and possibly go and interview these witnesses for me before we subpoena them. I haven't even brought up a list of witnesses for my case yet.

The State opposed McDaniel's request, noting that he "filed for reciprocal discovery in a timely fashion," but had not provided a list of defense witnesses. It also argued that McDaniel

> talks about things that are not germane to these issues. . . . There just are a lot of issues that - - he does not have the legal training and has not been able to zero in on the issues at hand. . . . I know where this is

9

going, I know where the trial is going, and where he intends to take this, and the vast majority of where he intends to take it, the State would object as to relevance and feels as confident as the State can be that that evidence would not be allowed in the criminal proceedings. It is just not relevant. . . .

So I think that what we have here, Judge, is a situation where Mr. McDaniel, by his own choosing, has chosen to represent himself, and that's fine, but he is just unable to zero in on the issues and so he is attempting to bring everything into court. And I would ask the Court not entertain the idea of giving him more time or assigning more resources for him to go out there and do things that just would not be relevant at trial anyway. Or at least make him proffer as to what he thinks would be relevant, some showing of why he would need this to bring in evidence that would be relevant to the three documents that is the entire State's case.

After determining that McDaniel had been incarcerated since September 2010, the trial court denied his motion for an investigator without making any further inquiry into the evidence McDaniel sought to obtain. It then informed McDaniel that jury selection would begin at 1:30 p.m.

McDaniel then requested that

since the State would like for me to come in here and basically drop my pants in front of the jury and lose this case without any kind of - - not

10

being able to prepare properly for trial, I'm going to have to withdraw as representing myself. I'm going to have to hire an attorney. He's leaving me no alternative.

There's no way I'm prepared to come to trial. I don't have all my witnesses put together. He basically just went over what's going to happen in the trial. That wasn't the issue of getting the investigator to help me prepare, so there's no way I can try this case at this point in time. I'm not ready whatsoever.

I'm not trying to use up any resources of the Court and I appreciate the Court allowing me to go to the law library and protecting my constitutional rights to that end, but I'm just not ready. I didn't even know I had this hearing today.

The trial court responded,

Well, Mr McDaniel, I've tried on many occasions to explain to you, and have done so at length, that there are risks attendant with self-representation, and you have been given notice on multiple occasions to be here and to be present and to fully present your case, including giving you access to the law library. I find this to be a tactic of delay and we are going to proceed at 1:30.

Based on our review of this evidence, we conclude that the State has failed to meet its burden of demonstrating on the record that McDaniel was made aware of the

11

dangers of representing himself. While it is clear from the record that the trial court intended at some point in the future to fulfill its obligation to ensure that McDaniel made a knowing waiver of his right to counsel, it did not follow through in subsequent hearings. The trial court's conclusory statement that it had previously warned McDaniel about the risks of self-representation fails to provide details about the information actually provided to McDaniel, and therefore cannot be used to satisfy the State's burden. See *Middleton v. State*, 254 Ga. App. 648, 649 (1) (563 SE2d 543) (2002). Cf. *Allison v. State*, 288 Ga. App. 482, 490 (2) (b) (654 SE2d 628) (2007) (trial court's conclusory affidavit failed to establish knowing and intelligent waiver of right to jury trial).

(c) We now consider whether harm resulted from the trial court's failure to fully inform McDaniel of the dangers of proceeding pro se. "To establish harmless error, the State has the burden of showing beyond a reasonable doubt that the error did not contribute to the verdict." (Citations and footnote omitted.) *Middleton*, supra, 254 Ga. App. at 650 (2). And this court has "repeatedly found that such error was *not* harmless where the record shows that the defendant did not mount an able defense - - even though the evidence of guilt was ample." (Citations and footnote omitted.; Emphasis in original.) Id. at 650-651 (2). Moreover, the availability and actual

12

participation of assisting counsel for a pro se defendant during the trial does not automatically satisfy the State's burden to prove harmless error beyond a reasonable doubt. See *Humphries v. State*, 255 Ga. App. 349, 351-352 (1) (565 SE2d 558) (2002) (finding State failed to meet burden of showing harmless error despite participation of counsel at trial); *Middleton*, supra, 254 Ga. App. at 650 (1) (same).

Here, the record shows that McDaniel was not prepared to try his case and asked for counsel when he learned that the court would not appoint an investigator to assist him in trial preparation while he remained in jail. Immediately before jury selection began, the trial court summoned a public defender already in the courthouse "to sit with Mr. McDaniel and answer any questions he might have." The record shows that McDaniel made his own opening statement, which was not transcribed other than an objection made by the State to improper argument in an opening statement that was sustained by the trial court. McDaniel also had difficulty speaking loudly enough for the jury to hear him during the trial.

During the State's direct examination of three witnesses, McDaniel made no objections. When the State's chief witness testified that McDaniel signed the critical document at issue in his trial, an unauthorized discharge of a deed to secure debt,

13

McDaniel made no objection as to foundation, even though the State did not establish that the witness was familiar with McDaniel's signature.

During cross-examination of the State's chief witness, McDaniel elicited information about another loan which he failed to repay, and asserted that this witness allegedly authorized him to sign to a discharge of a deed to secure a debt of $55,000 in exchange for a separate $20,000 investment in a company not owned by the witness. The witness testified during cross-examination:

> Danny, that is absolutely false. I have never sent you that document and never gave you that authority. Why would I give you authority to release a $55,000 lien even if you gave the $20,000 directly to me. You give it to somebody else. You didn't give it to me. And if you had given it to me, I wouldn't have given you that document or the right to file it. That's crazy.
>
> . . .
>
> You and I were trying to get into a business opportunity which had nothing to do with the [property secured by the deed to secure debt]. If it worked and it allowed you to make your payments on [the property], that's great. But you never paid, Danny. That's the bottom line.
>
> . . .

Had you given that money directly to me, I never would've given you authority to file this document. You still owed me $35,000 if you had given it to me for this property. You didn't. That was your choice to take that risk and generate some income to make these payments. You didn't do it. End of story, Danny.

At one point, the witness also stated, "You're trying to combine things that have nothing to do with each other, Danny." McDaniel also elicited on cross-examination information about a letter he drafted for the witness to sign that the witness stated he refused to sign because the letter contained false statements. The trial court sustained the State's objection to McDaniel's attempt to introduce the document into evidence.

The State concluded its case with evidence of McDaniel's admission to the State's attorney, in the presence of an investigator working for the State, that he signed the discharge of the deed to secure debt for the property at issue. The investigator testified that McDaniel made this admission on June 29 in the county jail, after McDaniel filed his motion to proceed pro se, and the day after the hearing in which the trial court stated its intent to go over his *Faretta* rights in a July 19 hearing.

Based upon the record before us, we find that the State failed to meet its burden of demonstrating harmless error beyond a reasonable doubt. McDaniel failed to make objections, including a facially valid foundation objection, presented a defense

through cross-examination that the State's witness described as "crazy," submitted evidence showing that he failed to repay an unrelated loan and created another fraudulent document, and made an incriminating admission to the State after deciding to represent himself pro se without the benefit of a warning from the trial court about the dangers of representing himself. While the public defender - - despite having been called immediately before the trial began without any knowledge of the case - - made an untranscribed closing argument on behalf of McDaniel, handled the charge conference on his behalf, and assisted McDaniel in the sentencing hearing, we cannot say that these efforts rendered the trial court's error harmless based upon the particular facts and circumstances of this case. We therefore reverse and remand this case for a new trial. When the case returns to the trial court, McDaniel may choose to be represented by counsel or waive his right to counsel, after being made aware of the dangers of proceeding pro se. *Ross v. State*, 258 Ga. App. 346, 347 (574 SE2d 406) (2002).

2. Based upon our holding in Division 1, McDaniel's claim that the trial court erred by denying his motion for a continuance to obtain counsel is rendered moot.

*Judgment reversed and case remanded with direction. Barnes, P. J., and Branch, J., concur*.