**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 14, 2019**

# In the Court of Appeals of Georgia

A19A0454. RUTLEDGE v. THE STATE.

COOMER, Judge.

Gregory Rutledge, Jr. was indicted on one count of aggravated stalking after he was accused of sending harassing text messages to his ex-wife in violation of a temporary restraining order. Following a jury trial at which he elected to represent himself, Rutledge was convicted and sentenced the same day. Rutledge filed a motion for new trial, as amended, alleging the trial court erred in allowing him to proceed pro se without first establishing that he made a knowing, intelligent, and voluntary waiver of his right to counsel. After conducting a hearing on the motion, the trial court denied Rutledge's request for a new trial.[1] On appeal, Rutledge again argues that he

---

[1] Rutledge also filed a motion to modify his sentence which was argued during the hearing for his motion for new trial and later denied by the trial court. However, Rutledge did not appeal the trial court's denial of that motion.

is entitled to a new trial because the trial court failed to make a finding in the record that Rutledge's waiver of his right to counsel was knowingly and voluntarily made. Because the totality of the record demonstrates that Rutledge's decision to waive his right to counsel was knowing, intelligent, and voluntary, we disagree and affirm.

It is well established that "both the federal and state constitutions guarantee a criminal defendant the right to self-representation. To be valid, a defendant's waiver of his right to be represented by counsel must be knowingly and intelligently made." *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009) (citations and punctuation omitted). To establish waiver, our Supreme Court has held that "[t]he record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000) (citations and punctuation omitted). "The trial judge is not required to use any particular language in making the defendant aware of his right to counsel and the dangers of self-representation." *Martin-Argaw v. State*, 343 Ga. App. 864, 867 (2) (806 SE2d 247) (2017) (citations omitted). However, "when a defendant challenges an alleged waiver on appeal, it is the State's burden to prove that the defendant received sufficient information and guidance from the trial court upon which to knowingly and intelligently relinquish this right." *Hamilton v. State*,

2

233 Ga. App. 463, 467 (1) (b) (504 SE2d 236) (1998) (citations omitted). "This evidence must overcome the presumption against waiver." *Id*. (citations omitted). "The trial court's ruling as to whether the defendant's waiver of the right to counsel was valid is reviewed for abuse of discretion." *Cox v. State*, 317 Ga. App. 654, 654 (732 SE2d 321) (2012) (footnote omitted).

With these guiding principles in mind, the record shows that Rutledge was charged with one count of aggravated stalking after sending text messages to his former wife in violation of a temporary restraining order that prohibited him from having any direct or indirect contact with her. At his arraignment hearing, Rutledge was appointed counsel, entered a plea of not guilty, and was presented with a copy of the indictment, a list of the State's witnesses, and a plea offer letter. Rutledge later appeared with his appointed counsel, William Rhodes, for a status hearing where he was advised of the nature of the charge against him and the range of allowable punishment for the charge. On the morning of trial, Rutledge appeared with Rhodes to argue pre-trial motions. After the trial court denied Rutledge's pre-trial motions, Rutledge, through counsel, announced that he wanted to proceed with a jury trial. The court recessed and Rutledge was taken back to a holding area where he spoke with Rhodes and indicated that he wanted to represent himself. Following a conference

3

between the trial court and Rhodes, Rutledge told the trial court that he and Rhodes were "on a different page" with respect to certain evidence and how it would be used during the trial. The trial court then told Rutledge that Rhodes is "an experienced trial attorney" and "has a comprehensive understanding of . . . the law." Rutledge responded that "there seems to be unsurety[sic] as far as, you know, us moving forward, the case as far as a plea as opposed to a jury trial." The trial court then reminded Rutledge that there are times when attorneys tell their clients things that the client does not want to hear, but that if Rutledge wanted a trial, Rhodes would provide the best defense possible. The trial court asked Rutledge what he wanted the court to do. Rhodes then stated on the record that he explained to Rutledge he had the option to continue the trial, ask for new appointed counsel, or represent himself with Rhodes as standby counsel. The following exchange occurred between Rutledge and the trial court:

> RUTLEDGE: I wish to proceed pro se and with standby counsel.

> TRIAL COURT: You are seriously going to embark on a jury trial representing yourself?

> RUTLEDGE: It's my case, Your Honor.

4

TRIAL COURT: That wasn't my question.

RUTLEDGE: Yes, sir.

TRIAL COURT: So the answer is yes.

RUTLEDGE: Yes, sir.

TRIAL COURT: Are you prepared to do that now?

RUTLEDGE: Yes, sir.

TRIAL COURT: You are entitled to do that if you want to do that, Mr. Rutledge, but I just feel absolutely obligated to tell you at this time what a horrible decision I think that is. You are wanting to go [sic] trial representing yourself with Mr. Rhodes as standby counsel. Is that my understanding?

RUTLEDGE: Yes, sir.

TRIAL COURT: Okay. Mr. Rhodes, you are going to be standby counsel, and that will mean that you'll sit in the row behind Mr. Rutledge, and Mr. Rutledge will ask any questions he has of you during the trial of this case.

After this exchange, Rhodes left his trial preparation materials, such as witness question outlines, voir dire questions, and requests to charge with Rutledge at the defense table. The court returned from a short recess and the following exchange occurred between Rutledge and Rhodes:

> RHODES: This is another copy of the indictment. Please look here. This has not changed. The 18th day of July they are still alleging, you know, the crime of aggravated stalking here in Gwinnett County. Okay. That is what you are charged with. Do you understand?
>
> RUTLEDGE: Yes, sir.

From that point to the end of trial, Rutledge actively tried his case with the assistance of standby counsel. Rutledge fully engaged in voir dire and questioned jurors with specific follow up questions. Once the jury was selected and the jurors were excused from the courtroom, the trial court explained the procedure the court would use throughout the trial of the case and gave cautionary instructions regarding Rutledge's rights as a defendant and the State's burden of proof. The trial court asked Rutledge if he understood what had been explained to him and if he had any questions, to which Rutledge responded that he understood and did not have any questions. When the trial resumed the following day, Rutledge made pre-trial

6

motions, objected during the State's opening statement, and gave his opening statement to the jury outlining his theory of the case. During the trial, Rutledge made arguments against the use of certain prior acts evidence by the State, challenged the sufficiency of the indictment, and successfully argued for the admission of other evidence. Rutledge cross-examined all of the State's witnesses including an extensive cross-examination of the victim, his former wife.

At the close of the State's case, Rutledge made a motion for acquittal arguing the State's evidence failed to show a pattern sufficient to support the charge of aggravated stalking. At the end of the trial, Rutledge made his closing arguments in which he reiterated his overarching theme of the case, while highlighting for the jury certain deficiencies in the State's case against him. Rhodes, as standby counsel, met with Rutledge at the jail after the first day of trial to go over any questions Rutledge may have had in preparation for the next day, and throughout the trial, Rhodes routinely counseled Rutledge during breaks. A jury found Rutledge guilty of aggravated stalking and he was sentenced to serve a total of ten years with nine years in confinement.

In his sole enumeration, Rutledge argues that the trial court's failure to conduct a hearing to establish on the record that he made a knowing, intelligent, and voluntary

7

waiver of his right to counsel is reversible error. While we agree that the trial court could have inquired further to ensure Rutledge's decision to represent himself was knowing and voluntary, the record clearly demonstrates a valid waiver by Rutledge.

a. As an initial matter, we disagree with Rutledge's contention that the trial court failed to make a finding on the record that he made a knowing and voluntary waiver of his right to counsel. In its order denying the motion for new trial, the trial court expressly found that "the totality of the record demonstrates that [Rutledge] made this decision freely, voluntarily, and intelligently." This Court has held that "a trial court's determination of a knowing and voluntary waiver within an order denying a motion for new trial qualifies as a finding on the record." *McDaniel v. State*, 327 Ga. App. 673, 675 (a) (761 SE2d 82) (2014) (citation omitted). Moreover, the determination by the trial court as to whether a defendant has made an intelligent waiver of his right to counsel "depends on the peculiar facts and circumstances of each case . . . [and] our Supreme Court has expressly disapproved the reading of decisions of this court . . . to require a trial court to make specific inquiries of a defendant." *Martin-Argaw*, 343 Ga. App. at 867 (2) (citations and punctuation omitted).

8

While articulated findings on the record by a trial court are preferable, "it is not required when the record as a whole demonstrates a defendant's knowing waiver." *Martin-Argaw*, 343 Ga. App. at 870 (2) (citation omitted). Thus, this Court must first consider whether the State met its burden of demonstrating that the particular facts and circumstances of this case show that Rutledge was made aware of the dangers of representing himself and nonetheless knowingly and voluntarily waived his right to counsel. *See Cox*, 317 Ga. App. at 655 ("The state has the burden of demonstrating that the defendant received sufficient information and guidance from the trial court to make a knowing and intelligent waiver of the right to counsel." (footnote omitted)).

In the present case, the record reflects that Rutledge was advised of the nature of the charge against him during his arraignment when the State presented him with a copy of the indictment. At a separate status hearing, Rutledge was further advised by the trial court of the nature of the charge against him as well as the maximum sentence he could receive if found guilty of the charge. On the morning of trial, the trial court counseled Rutledge that Rhodes had comprehensive knowledge about the legal issues involved with the case and reminded him that while he may not always agree with his attorney, Rhodes would provide him with the best defense possible. The trial court engaged in a short colloquy with Rutledge and expressed its opinion

9

that Rutledge was making a "horrible decision" to represent himself, but ultimately granted Rutledge's request. After voir dire, the trial court engaged in a second colloquy with Rutledge where the trial court further explained the procedure of the court and Rutledge's constitutional rights with respect to testifying and the burden of proof. Despite the trial court's warnings, Rutledge chose to exercise his right to represent himself.

We note that although the trial court expressed concern to Rutledge that he was making a "horrible decision" by electing to represent himself, merely apprising a defendant that self-representation is generally a bad decision is not sufficient to show that a defendant was made aware of the dangers of self-representation. *See Manning v. State*, 260 Ga. App. 171, 172 (581 SE2d 290) (2003) (waiver not knowing and voluntary where defendant was aware he was facing considerable prison time but trial court simply warned him that he lacked sufficient legal knowledge and that representing himself was an "unwise decision" and "extremely ill-advised"). Even with its explanation of trial procedure, the trial court should have queried further to ensure that Rutledge was aware of the dangers and disadvantages of representing himself beyond expressing in general terms its disapproval of Rutledge's decision. *See Lamar v. State*, 278 Ga. 150, 152 (1) (b) (598 SE2d 488) (2004) (reversible error

10

where trial court did not try to make defendant aware of the dangers and disadvantages he faced proceeding pro se at trial due to his ignorance of basic criminal law concepts but instead queried the defendant on his technical legal knowledge).

However, notwithstanding any perceived scantiness in the trial court's warning to Rutledge, based on a review of the record as a whole, Rutledge was made fully aware of the dangers of self-representation. At the hearing on Rutledge's motion for new trial, Rhodes testified that he made Rutledge fully aware of the nature of the charge, the possible sentences, potential defenses, plea offers, and the dangers of self-representation. *See Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000) (defendant knowingly and intelligently waived right to counsel where public defender testified that she informed defendant of the charge, possible sentences, and dangers of self-representation); *Simpson v. State*, 238 Ga. App. 109, 112 (1) (517 SE2d 830) (1999) (knowing waiver where trial court advised defendant that it would be "extraordinarily unwise" to represent himself and where appointed counsel informed defendant of the dangers of self-representation). "Thus, the trial transcript clearly indicates that defendant was not denied the right to counsel by the trial court, but instead knowingly, understandingly and voluntarily elected to represent himself . . .

11

. Under the circumstances of this particular case, we find no error requiring a reversal of the conviction." *Rutledge v. State*, 224 Ga. App. 666, 670 (3) (482 SE2d 403) (1997) (citation omitted).

b. Assuming, *arguendo*, that the trial court erred in allowing Rutledge to represent himself, any perceived error was harmless beyond a reasonable doubt. "To establish harmless error, the State has the burden of showing beyond a reasonable doubt that the error did not contribute to the verdict." *Middleton v. State*, 254 Ga. App. 648, 650 (2) (563 SE2d 543) (2002) (footnote omitted). And this Court has held that "such error was not harmless where the record showed that the defendant did not mount an able defense—even though the evidence of guilt was ample." *Id*. at 650-651 (2) (citations and emphasis omitted). A review of the entire record demonstrates that Rutledge was prepared to try his case and mounted an able defense of his case.[2] The trial court found that Rutledge performed the "yeoman's work in representing himself on trial" from voir dire to closing argument, and did so in a cogent and able manner throughout. At the hearing on the motion for new trial, Rhodes testified that

---

[2] We agree with Rutledge that having Rhodes as standby counsel is not sufficient for the State to satisfy its burden of proving harmless error beyond a reasonable doubt regardless of whether, as the trial court concluded, Rhodes "acted as more than a standby counsel, routinely counseling with [Rutledge] during breaks." *See McDaniel*, 327 Ga. App. at 680.

12

Rutledge's questioning of witnesses was good, that Rutledge is "an intelligent person," and that overall Rutledge did a good job defending his case under the circumstances. The record also shows that Rutledge's examination of witnesses, objections, and arguments for certain motions reflected not only his clear understanding of the charges against him, but also demonstrated his defense strategies and theories of the case.

However, despite his best efforts, the evidence against Rutledge was uncomplicated and simply overwhelming. Rutledge was charged with sending harassing and intimidating text messages to his former wife in violation of the temporary restraining order. Documentary evidence such as the temporary restraining order, divorce decree, parenting plan, and the subject text messages were admitted at trial as well as testimony from Rutledge's former wife describing her relationship with Rutledge and the context of the messages she received from him. Possibly the most damning of all the evidence presented to the jury was a video of Rutledge confronting his former wife in the parking lot of their child's daycare. Thus, "viewing the evidence as a whole, and in light of the overwhelming evidence of [Rutledge's] guilt, it is unlikely that defendant's convictions were attributable to his decision to

represent himself." *Reviere v. State*, 231 Ga. App. 329, 331 (1) (498 SE2d 332) (1998) (citation omitted).

*Judgment affirmed. Doyle, P. J., and Markle, J., concur*.