**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 26, 2021**

# In the Court of Appeals of Georgia

A21A0972. STEWART v. THE STATE.

PINSON, Judge.

After representing himself at trial, Ronald Stewart was convicted of aggravated battery, felony obstruction of an officer, and simple battery. He argues on appeal that the evidence was insufficient as to each of these charges, and that the trial court erred in ruling that he knowingly and voluntarily waived his constitutional right to counsel. We hold that the evidence was sufficient to sustain Stewart's convictions. But we agree that the trial court erred in concluding that Stewart's waiver was knowing and voluntary.

In the months before trial, Stewart retained three different attorneys, and after the third one withdrew, he consistently maintained that he would retain counsel before trial. When he showed up for trial without counsel, the court did not hold a

hearing under *Faretta v. California*, 422 U.S. 806, 835 (V) (95 S.Ct. 2525, 45 LEd2d 562) (1975), or even discuss with Stewart the dangers of proceeding without counsel. And even assuming the standard for waiver could be met without having a hearing or discussion at the time of the waiver decision, no substantive discussion of those dangers appears anywhere in the record of pretrial proceedings. Under these circumstances, and given the presumption against waiver of the constitutional right to counsel, the trial court erred in concluding that Stewart knowingly and voluntarily waived that fundamental right. So we reverse the trial court's order and remand for a new trial.

## Background

While in jail on charges of family violence battery and theft by taking, Ronald Stewart got into a fight with his cellmate.[1] During the fight, Stewart punched his cellmate in the mouth. He then followed the cellmate out into the common room of the cell block and continued attacking him until an officer intervened. As a result of the attack, the cellmate suffered a broken jaw and substantial bleeding.

---

[1] On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004).

Three months later, Stewart attacked a corrections officer. The officer had asked Stewart to comply with the dress code by putting on the upper part of his jumpsuit and removing his headband. Stewart refused, cursed at the officer, and walked into his room. The officer followed him and Stewart tried to gouge out the officer's eyes. When the officer pushed Stewart out of his room, Stewart grabbed the officer's neck and continued to struggle until more officers arrived to help subdue him.

Stewart was charged in two separate indictments with aggravated battery (as to the cellmate) and felony obstruction of an officer and simple battery (as to the officer).

After his initial indictment in May 2017, Stewart declined the assistance of the public defender and instead hired an attorney. That attorney withdrew almost immediately, at which point Stewart hired a different one. In September 2017, Stewart asked that his second attorney be released and spoke to the trial court about hiring new counsel or proceeding to trial pro se. In October 2017, Stewart hired a third attorney. In February 2018, after a hearing, the trial court entered an order over Stewart's objections authorizing Stewart's third attorney to withdraw. In March 2018, Stewart filed a pro se speedy trial demand.

3

Stewart appeared pro se at a motions hearing on April 4, 2018. The trial court asked whether Stewart intended to hire counsel, and he told the trial court he intended to retain a new attorney but had not yet done so. The trial court commented to Stewart that "we talked about the pitfalls about representing yourself before," to which Stewart responded affirmatively. Stewart then confirmed that he planned to hire an attorney. The relevant portion of the colloquy is as follows:

> COURT: We talked about the pitfalls about representing yourself before.
> STEWART: Yes, sir.
> COURT: Do you intend on trying to hire somebody?
> STEWART: Yes, sir. Sir, I have somebody. My intention is to go to trial, sir. I will have an attorney by trial.
>
> [....]
>
> COURT: So if you are going to get an attorney you need to go ahead and get an attorney so that attorney can be prepared to go to trial. ... [I]t is the week of April 30th so that is less than a month. An attorney needs a significant amount of time to prepare for a trial of a case.
>
> STEWART: Yes, sir. ... I have been talking with the attorney so I am just waiting to just see how things go.

Later in the same hearing, there was further discussion about Stewart's prior counsel. Stewart complained that the court had allowed his most recent attorney to "walk away from me," arguing that the attorney had "a legal obligation to me to

4

represent me." Stewart then said again that he was going to "hire an attorney." The parties discussed pending motions, Stewart's status as a recidivist, and the factual basis of the charges. Then, "because of [Stewart's] being in a pro se situation," the prosecutor explained the maximum sentences he faced, as well as an upcoming hearing on a probation revocation petition. The trial court then repeated the charges and maximum sentences Stewart faced. Stewart said he understood. The hearing concluded with the following exchange:

> STEWART: Your Honor, I am ready for trial ....
> COURT: All right, I still suggest you get [yourself] an attorney.
> STEWART: I am, Your Honor.

Five days before trial, Stewart appeared pro se at a probation-revocation hearing. During the hearing (at which his probation was ultimately revoked), there was further discussion as to Stewart's record of firing or alienating counsel. During this discussion, Stewart accused the court of failing "to give me the paperwork I need to hire me an attorney," "tak[ing] my lawyer," and "let[ting] two attorneys withdraw from my case for no reason whatsoever." The trial court again asked Stewart whether he was "ready to go to trial on Monday." Stewart said that he was, to which the trial

court responded, "I am anticipating you are not going to have an attorney." Stewart responded, "I will have a lawyer at trial."

Stewart did not have a lawyer at trial. There were two trials: the first on his charges for the battery on his cellmate, and the second, immediately afterward, on his attack on the corrections officer. At the outset of the first trial, the court asked Stewart whether he was representing himself, to which Stewart responded, "Yes, sir." The trial court noted that "the last time you were in court[, you indicated] that you were going to have an attorney here today," and asked whether it should assume, "by you sitting by yourself, [that] you don't have one?" When Stewart confirmed that he did not, the trial court assigned counsel from the public defender's office to sit with Stewart at both trials and told him that counsel "can render you any advice you need in that regard." Stewart confirmed that he understood. The court engaged in no further discussion with Stewart about proceeding to trial pro se.

Both trials resulted in convictions. Stewart was found guilty of aggravated battery as to his cellmate, and obstruction and simple battery as to the corrections officer. For the aggravated battery of his cellmate, he was sentenced to 20 years with 10 to serve. For the simple battery and obstruction of the corrections officer, he was sentenced to five years to serve.

6

In December 2018, Stewart was found indigent, and appellate counsel was appointed. Appellate counsel filed amended motions for new trial, which were denied. In its order, the trial court expressly found that Stewart had made a knowing and intelligent waiver of his right to counsel. This appeal followed.

**Discussion**

1. Through counsel, Stewart argues on appeal that the evidence was not sufficient to sustain his convictions. In reviewing sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but determine only "whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt." *Chambers v. State*, ___ Ga. App. ___ (1) (Case No. A21A1158, decided September 14, 2021) (quotation omitted). Applying that standard here, we hold that the evidence was sufficient to sustain Stewart's convictions. Stewart's "sucker punch" of his cellmate resulted in substantial bleeding and a jaw broken in "multiple places." A battery that causes "serious temporary disfigurement to the victim and loss of use of [his] jaw until it healed" is an aggravated battery. *Baker v. State*, 245 Ga. 657, 667 (6) (266 SE2d 477) (1980). Likewise, Stewart's attack on the corrections officer, which involved an attempt to gouge out his eyes and other forcible resistance, was sufficient to warrant his convictions for both felony

7

obstruction and simple battery. See OCGA §§ 16-10-24 (b) (defining felony obstruction as "offering or doing violence" against an officer), 16-5-23 (a) (defining simple battery as including intentional "physical contact of an insulting or provoking nature with the person of another"); *Pearson v. State*, 224 Ga. App. 467, 468 (1) (480 SE2d 911) (1997) (simple battery is not a lesser included offense of felony obstruction of an officer).

2. Stewart next contends that the trial court erred in finding that he knowingly and voluntarily waived his right to counsel. We review that ruling for an abuse of discretion. See *Tariq-Madyun v. State*, __ Ga. App. __ (2) (Case No. A21A1037, decided September 23, 2021). Based on the peculiar circumstances of this case, we agree with Stewart.

(a) Because Stewart was charged with crimes for which imprisonment is a penalty, he had a constitutional right to the assistance of counsel for his criminal trial. Ga. Const. of 1983, Art. I, Sec. I, Para. XIV. This right to counsel may be waived "only by voluntary and knowing action." *Porter v. State*, 358 Ga. App. 442, ___ (2) (a) (855 SE2d 657) (2021) (quotation omitted); see *Burney v. State*, 309 Ga. 273, 279–80 (2) (845 SE2d 625) (2020); *Martin-Argaw v. State*, 343 Ga. App. 864, 867 (2) (806 SE2d 247) (2017). Such a waiver is generally established with two steps: the

8

defendant asserts that he has decided to represent himself, and the trial court holds what is known as a *Faretta* hearing "to ensure that the defendant knowingly and intelligently waives the 'traditional benefits associated with the right to counsel' and understands the 'disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" *Wiggins v. State*, 298 Ga. 366, 368 (2) (782 SE2d 31) (2016) (quoting *Faretta*, 422 U. S. at 835–36); *Porter*, 358 Ga. App. at ___ (2) (a). The State bears the burden of demonstrating that Stewart "received sufficient information and guidance from the trial court upon which to knowingly and intelligently relinquish this right," and there is a "presumption against waiver." *Martin-Argaw*, 343 Ga. App. at 868 (2) (quotation omitted).

Applying these standards and based on the full record before us, we cannot find evidence of a knowing and voluntary waiver sufficient to uphold the trial court's ruling. This conclusion is based on all the circumstances here, including Stewart's course of conduct leading up to the trial, the timing and context of the purported waiver, and the trial court's discussions with Stewart (and lack thereof) relevant to the waiver decision, and the substance of the information conveyed.

9

First, Stewart's course of conduct leading up to the trial date raises serious doubts that he expressed an intentional and voluntary decision to waive his right to counsel. See *Saunders v. State*, 347 Ga. App. 84, 86–87 (2) (815 SE2d 622) (2018) (waiver was not knowing and voluntary where facts "merely show[ed] that [the defendant] did not request or obtain counsel despite being told of her right to counsel and the perils of not having counsel"). Over the course of the six months following his arrest, Stewart retained three attorneys. Two of those attorneys withdrew from representation over Stewart's objection, a fact that Stewart brought up unhappily at a later appearance. Throughout his pretrial proceedings, he maintained that he intended to retain counsel to represent him at trial, telling the court, "I will have an attorney by trial," "I will have an attorney," "I am [going to have an attorney]," and "I will have a lawyer at trial." . He told the court shortly before trial that he had not been able to hire an attorney for trial because he had not been provided a written order confirming the withdrawal of his prior counsel. See *Martin v. State*, 240 Ga. App. 246, 248 (1) (523 SE2d 84) (1999) (waiver was not knowing and voluntary where defendant believed he did not qualify for court-appointed attorney and could not afford private counsel). And even on the morning of trial, Stewart did not say in so many words that he wanted to waive his right to counsel, or that he had decided

10

to proceed pro se. Instead, he merely agreed that he did not *have* an attorney when the trial court noted that he was "sitting by [him]self." This year-long course of conduct up through the morning of his first trial paints a picture of a defendant who wanted an attorney but, for reasons not entirely clear from the record, failed to retain one—not a defendant who definitely wanted to go to trial without counsel.

Second, the complete lack of any contemporaneous discussion bearing on the waiver decision cuts strongly against a finding of knowing and intelligent waiver here. Some precedents suggest that a trial court *must* hold a *Faretta* hearing (or at least a "colloquy," *Tariq-Madyun*, ___ Ga. App. at ___ (2)), *at or following the time* that the defendant expresses a clear intent to represent himself. See *Oliver v. State*, 305 Ga. 678, 680 (2) (827 SE2d 639) (2019) (if a defendant makes a clear and unequivocal assertion of the right to self-representation, the request "*must be followed by a hearing* to ensure that the defendant knowingly and intelligently waives" the right to counsel (emphasis supplied, quotation omitted)); *Wiggins*, 298 Ga. at 368 (2) (same); *Martin-Argaw*, 343 Ga. App. at 867 (2) (same); see also *Porter*, 358 Ga. App. at ___ (2) (a) (vacating conviction because the trial court failed to "conduct[] a hearing on the record to further advise Porter on his right to counsel and on the dangers of proceeding pro se" after he asked to represent himself).

11

But even if a contemporaneous discussion is not an ironclad requirement, see, e.g., *Martin-Argaw*, 343 Ga. App. at 872 (Bethel, J., concurring dubitante) ("But we have not explicitly stated that such a hearing *must* be held.") (emphasis in original), the complete absence of any such discussion under the circumstances here makes it much harder to establish a knowing and intelligent waiver. To be sure, the trial court and the State made some effort to inform Stewart about some of what he needed to know to waive his right to counsel "with eyes open," including his charges and their factual bases, his status as a recidivist, and the maximum sentences he faced. But every such discussion took place months before trial while Stewart was still maintaining, without equivocation, that he would have an attorney for his trial, and so none of these statements were couched as warnings about the dangers of self-representation. And when it finally became clear on the morning of his first trial that Stewart did not have counsel, the trial court failed to hold a *Faretta* hearing or even have a discussion with Stewart at that time to make sure he was aware of the "traditional benefits associated with the right to counsel" or the "disadvantages of self-representation." *Wiggins*, 298 Ga. at 368 (2) (quotations omitted). Instead, the

trial court simply assigned standby counsel and moved forward with the trial.[2] The utter lack of discussion about the waiver decision at a time when Stewart was actually weighing that decision also cuts against a finding that he waived his right knowingly and intelligently.

Third, this record is pretty thin on what Stewart knew about the dangers of self-representation. We have declined to divine from the constitutional text any specific questions or information a trial court *must* ask or provide to make sure a defendant's waiver of the right to counsel is knowing and voluntary. See *Tariq-Madyun*, ___ Ga. App. at ___ (2). But at the least, our precedents say that the record must show that the defendant is aware of two sets of information: (1) the "dangers" and "disadvantages" of self-representation, and (2) the basics of his case, including the general nature of the charges and case against him, possible defenses and mitigating circumstances, and the range of consequences if convicted of those charges. See *McDaniel v. State*, 327

---

[2] The presence of standby counsel does not cure a violation of the right to counsel. See, e.g., *Rutledge v. State*, 351 Ga. App. 355, 360 n.2 (b) (829 SE2d 176) (2019) (if the defendant's right to counsel is violated, the presence of standby counsel is not enough to prove the error was harmless beyond a reasonable doubt); *McDaniel v. State*, 327 Ga. App. 673, 680 (1) (c) (761 SE2d 82) (2014) (same); *Humphries v. State*, 255 Ga. App. 349, 351 (1) (565 SE2d 558) (2002) (same); see also *Morman v. State*, 356 Ga. App. 685, 694 n.9 (2) (848 SE2d 165) (2020) (explaining there is no right to standby counsel, and standby counsel's failure to assist in the defense does not violate the defendant's right to counsel).

13

Ga. App. 673, 674–75 (1) (761 SE2d 82) (2014) (citing *Prater v. State*, 220 Ga. App. 506, 509 (469 SE2d 780) (1996)). The record here shows that Stewart heard from the State and the trial court about a subset of the second set of information (the charges against him, the fact that he would be sentenced as a recidivist, and the maximum sentences he faced, but not possible defenses to the charges or any mitigating circumstances). But the first set of information—why self-representation is a bad idea—is noticeably absent. All we have is the trial court's conclusory pretrial statement—"[w]e talked about the pitfalls about representing yourself before"—and Stewart's agreement that they did. But a trial court's "conclusory statement that it had previously warned [the defendant] about the risks of self-representation" that "fails to provide details about the information actually provided ... cannot be used to satisfy the State's burden." *McDaniel*, 327 Ga. App. at 680 (1) (b). And not a single conversation providing any detail at all about the "pitfalls" of self-representation appears in the record. Put simply, when it comes to Stewart's awareness of the dangers of self-representation and other information relevant to the waiver decision, this record is a mixed bag at best.

Any one of these shortcomings on their own might not have been enough to reverse the trial court's ruling here, which is, after all, reviewed for abuse of

14

discretion. But taken as a whole, the record shows a course of conduct in serious tension with the notion that Stewart intentionally waived his right to counsel; the complete absence of any contemporaneous discussion of the dangers of self-representation (much less a full *Faretta* hearing) after it became clear that the defendant did not have an attorney; and an incomplete set of information relevant to the waiver decision, conveyed piecemeal in the months leading up to trial while the defendant was, by all accounts, still planning to hire counsel. Under these circumstances, and given the strong presumption against waiver of the constitutional right to counsel, it was not within the trial court's discretion to conclude that Stewart knowingly and voluntarily waived that right. See *McDaniel*, 327 Ga. App. at 674 (1) ("The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case including the background, experience, and conduct of the accused.") (quotation omitted).

To be sure, we can sympathize with the trial court here. The court was faced with a defendant who refused the assistance of the public defender, cycled through multiple attorneys, insisted he would retain counsel for trial, and then, without warning, showed up the morning of trial without an attorney. Whatever the reasons

for these actions and Stewart's ultimate failure to retain counsel, some frustration and a desire to move on with the trial would be understandable. But waiver of the fundamental right to counsel in a criminal case "will not be lightly presumed," *Porter*, 358 Ga. App. at ___ (2) (a), and to find such a waiver, the record must reflect "that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." *Martin-Argaw*, 343 Ga. App. at 868 (2) (quotation omitted). For the reasons set out above, this standard is not met here.

(b) Having concluded that the trial court erred in ruling that Stewart waived his right to counsel, we now consider whether harm resulted from that error. See *McDaniel*, 327 Ga. App. at 680 (1) (c). To establish harmless error, the State has the burden of showing beyond a reasonable doubt that the error "did not contribute to the verdict." Id. (punctuation omitted).

That heavy burden is not met here. Even when the evidence against a defendant is substantial, error in finding a knowing waiver of the right to counsel may not be harmless where the record shows that the defendant did not mount an able defense. *Saunders*, 347 Ga. App. at 88 (2). Further, "the availability and actual participation of assisting counsel for a pro se defendant during the trial does not automatically

16

satisfy the State's burden to prove harmless error beyond a reasonable doubt." *McDaniel*, 327 Ga. App. at 680 (1) (c). And here, the record shows that Stewart's self-representation may well have hampered his defense. At both of his trials, he failed to ask any questions on voir dire. He raised no objections to the State's evidence. And he failed to request *any* jury charges, including—notably—a charge on self-defense, which was his main defense in the first trial. More than once, Stewart had trouble putting on his own evidence. At both trials, he told the trial court that he had subpoenaed several witnesses, but he was able to call only one, because the rest were not present in the courtroom. At his second trial, he tried to introduce several photos as evidence, but he had a hard time laying a proper foundation to do so, although the State ultimately stipulated to their admission. And the record does not show that Stewart received material assistance from standby counsel. Given the significant problems Stewart faced trying to represent himself, we cannot conclude that Stewart's convictions were "independent of his decision to represent himself," *Raines v. State*, 242 Ga. App. 727, 730 (1) (531 SE2d 158) (2000) (punctuation omitted) , and so the trial court's failure to ensure a knowing and voluntary waiver of counsel was not harmless beyond a reasonable doubt.

Given these conclusions, the judgment of the trial court must be reversed and this case remanded for a new trial.[3] When the case returns to the trial court, Stewart may choose to be represented by counsel, or he may waive his right to counsel after being made aware of the disadvantages of self-representation. See *McDaniel*, 327 Ga. App. at 682 (1) (c).

*Judgments reversed and case remanded. Dillard, P. J., and Mercier, J., concur.*

---

[3] Because we conclude that the evidence was sufficient to support Stewart's convictions, the State may retry him. *Porter*, 358 Ga. App. at ___ (2) (b) (ii) (citing *Lamar v. State*, 278 Ga. 150, 153 (2) (598 SE2d 488) (2004))*; Melton v. State*, 282 Ga. App. 685, 694 (2) (d) (639 SE2d 411) (2006) (holding that State may retry defendant on a specific charge "without violating the Double Jeopardy Clause, because there was sufficient evidence at trial to support that conviction").